
EOD
03/19/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **REICHMANN PETROLEUM CORP.** | § | |
| xx-xxx7354 | § | Case No. 06-60843 |
| 1048 Texan Tr., Grapevine, TX 76051 | § | |
| | § | |
| Debtor | § | Chapter 11 |

## MEMORANDUM OF DECISION

This matter came before the Court for a consolidated hearing of competing motions for transfer of venue: [1] the Motion to Transfer Venue of Affiliated Chapter 11 Case (the "Reichmann Motion") filed by Reichmann Petroleum Corporation, Debtor and Debtor-in-Possession in the above-referenced case ("Reichmann") on January 17, 2007, which seeks to transfer to this Court the Chapter 11 bankruptcy case of Freedom Pipeline, L.L.C. ("Freedom"), which is currently a debtor in a Chapter 11 case pending before the Corpus Christi Division of the United States Bankruptcy Court for the Southern District of Texas, on the basis that Freedom is an affiliate of Reichmann;[1] and [2] a Cross-Motion to Transfer Venue of the Reichmann Petroleum Proceeding to an Appropriate Venue filed originally on February 6, 2007, by the Official Committee of Unsecured Creditors appointed in the Freedom case (the "Freedom Committee") as a component of its objection to the Reichmann Motion and subsequently re-filed as an independent motion

---

[1] The Reichmann request to transfer the Freedom case to this Court was joined by the Official Committee of Unsecured Creditors for Reichmann Petroleum Corp. (the "Reichmann Committee") and Emergent Energy Partners, L.L.C, and opposed by Freedom, the Freedom Committee, and South Barnett Resources, L.L.C.

of both Freedom and the Freedom Committee on February 20, 2007.[2] At the conclusion of the consolidated hearing conducted on March 2, 2007, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[3]

## Factual and Procedural Background

Reichmann is a privately held oil and gas exploration and production company whose principal place of business is in Grapevine, Texas. In August 2005, Reichmann formed Freedom as a wholly-owned subsidiary designed to be the primary transporter of gas from the wells produced by Reichmann. One year later, Reichmann transferred its entire 100% interest in Freedom to Emergent Energy Partners, L.L.C. in exchange for a 30% stake in Emergent. Striker Petroleum, L.L.C. ("Striker") owns the remaining 70% interest in Emergent.

At all relevant times, the principal income-producing assets of Reichmann have been located in South Texas where it conducts gas production operations. Reichmann also has substantial holdings in North Texas through its activities in the Barnett Shale formation, though a significant number of its North Texas wells are currently in a non-

---

[2] The request to transfer the Reichmann case to Corpus Christi was joined by Hanover Compression, Ltd. and opposed by Reichmann and the Reichmann Committee. However, the Reichmann Committee urged at closing that the need for joint administration outweighed any consideration to allow the two cases to proceed in different venues.

[3] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A) and (O).

producing state.

Its holdings in East Texas are nominal at best. Prior to November 2006, Reichmann owned interests in only four wells in Denton County from which it gleaned an insignificant percentage of its income. It owned no assets within the confines of the Tyler Division of the Eastern District of Texas prior to November 2006.[4] In November, just prior to the filing of its bankruptcy petition, Reichmann acquired from Striker an undivided 5% of interests then held by Striker in certain leases located in Rusk County – an acquisition that provided Reichmann with approximately 2/10ths of 1% of the outstanding interests in those East Texas properties.[5] Thereafter, ostensibly on the basis of that eleventh-hour acquisition, Reichmann filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Court in this Court on December 8, 2006.

Less than three weeks later, on December 27, 2006, an involuntary petition was filed against Freedom in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division in case number 06-20797. Freedom is a gas pipeline company and, though reliable data was not introduced, all parties tacitly acknowledged that Freedom derives a substantial portion of its income from the transportation of Reichmann gas in both North and South Texas. The Debtor consented to an order for

---

[4] The counties (and the respective county seats) comprising the Tyler division of the Eastern District are: Anderson (Palestine); Cherokee (Jacksonville); Rusk (Henderson); Gregg (Longview); Henderson (Athens); Panola (Carthage); Rains (Emory); Smith (Tyler); Van Zandt (Canton); and Wood (Quitman).

[5] Freedom Exhibit 105.

relief under Chapter 11 on January 8, 2007.[6]

Nine days after the order for relief for Freedom was entered, Reichmann filed its motion to transfer the Chapter 11 case for Freedom to this Court pursuant to Fed. R. Bankr. P. 1014(b). Though they contest the allegation that Reichmann and Freedom are affiliated companies under §102 of the Bankruptcy Code, Freedom and the Freedom Committee filed a conditional cross-motion which asked for the transfer of the Reichmann case to Corpus Christi in the event that the Court finds the two debtors to constitute affiliates.

## Discussion

Tracking the language of 28 U.S.C. §1412, Fed. R. Bankr. P. 1014(b) states, in relevant part:

> If petitions commencing cases under the Code are filed in different districts by or against. . .a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice. . . the court may determine, in the interests of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Thus, this Court is charged with the duty to determine if Reichmann and Freedom are, in

---

[6] Though various parties at times referenced a dispute regarding the legitimacy of that consent, no evidence was tendered regarding it and this Court expresses no opinion on that issue.

fact, affiliates under §101(2) of the Bankruptcy Code. If they are not affiliates, then the Court has no judicial power to order the transfer of the Freedom bankruptcy case to any district. If they are indeed affiliates, and particularly in the light of the general consensus that joint administration of these cases is both legally and practically necessary, this Court assumes the task of determining the proper district for the adjudication of both cases. This decision rests within the sound discretion of the Court.

*Affiliate Status*

An "affiliate" is defined by §101(2) of the Bankruptcy Code as:

(A) [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities–
> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities–
> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote; . . .

Hence, the Code establishes three basic organizational structures under which related entities shall be considered as "affiliates." The first, addressed in subparagraph (2)(A), sets forth the circumstances under which a debtor's parent (or parent-like) entity will be considered an affiliate of the debtor. That provision is not germane to the present case. The second and third structures creating an affiliate relationship under the Code are addressed by the alternative clauses of §101(2)(B). The second structure reflects a vertical relationship between a debtor and a subsidiary (or subsidiary-like) entity. The third structure reflects a horizontal relationship between a debtor and another entity which share a common parent (or parent-like) entity, which accordingly justifies treating the debtor and its "sibling" entity as affiliates. Though the parties focused only upon the purported existence of a vertical relationship between Reichmann and Freedom, both vertical and horizontal relationships must be addressed based upon the facts presented.

*Vertical Relationships*

The typical vertical relationship which will give rise to an affiliate status involves a debtor, A, who owns, controls, or holds with the power to vote at least 20 percent of the outstanding voting stock of another company, C. Under this scenario, A and C are affiliates. However, the language describing this type of relationship is broad enough to include more complex relationships, such as when a debtor, A, has a wholly-owned subsidiary, B, which owns at least 20 percent of the outstanding stock of another company, C. Under this "tiered" scenario, though A neither directly owns, controls, nor

holds with power to vote, any interest in C, C could still constitute an affiliate of A, because at least 20 percent of C's outstanding voting stock is indirectly controlled by A. *See generally Agresti v. Ebar East, Inc. (In re Elephant Bar Restaurant, Inc.)*, 196 B.R. 747, 749 (Bankr. W.D. Pa. 1996) [noting the conceivable permissibility of such "tiered" attribution]; 2 COLLIER ON BANKRUPTCY ¶ 101.02 at p.101-34 (15th ed. rev. 2006). A's control of C is clear in this scenario, because A has total control of B, and can therefore dictate B's exercise of its voting interest in C. Hence A indirectly controls at least 20 percent of the outstanding voting shares of C. Yet it is important to distinguish *control*, as the term is generally understood in corporate law, from the considerably lesser standard of a 20 percent ownership of outstanding voting securities which is the statutorily-defined threshold of an affiliate status. Control requires at least 50% ownership.[7] *Elephant Bar*, 196 B.R. at 749.

In closing arguments, the parties acknowledged that if A owned 100% of B, and B owned 30 % of C, then C would be an affiliate of A. Such status is apparent since A would control B, and B would own at least 20 percent of the voting shares of C, giving A indirect control of at least 20 percent of the voting shares of C. The parties supporting the Reichmann Motion erroneously argue that the same result should be reached even when the ownership percentages are reversed from one tier to the other, as they are in the

---

[7] The Court can conceive of a relationship, involving cumulative voting or some similar arrangement, whereby a party owning less than 50 percent of another entity could exercise some control over that entity. However, there is no evidence of such a voting arrangement in this case, and the Court therefore needs not consider such a possibility.

present case — Emergent owns 100% of Freedom, but Reichmann owns only 30% of Emergent. However, such an argument fatally ignores the basic concept of control. Reichmann, owning only 30% of Emergent, cannot not dictate any board membership or actions of Emergent. Hence, Reichmann does not indirectly control any interest in Freedom. Nor does it own or hold with power to vote any interest in Freedom. Therefore, Freedom cannot be an affiliate of Reichmann under the vertical relationship prong of §101(2)(B).

*Horizontal Relationship*s

The horizontal affiliate relationship contemplated by the alternative prong of §101(2) reads as follows:

> The term "affiliate" means ... [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, ... by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor. . . .

The preponderance of the evidence presented at the hearing, though conflicting, established that Striker Petroleum, L.L.C. owns between 57% and 80% of the outstanding voting shares of Reichmann. In his direct examination of Sean Cady, Freedom's counsel inquired about the failure of Striker to vote its shares at a Reichmann corporate meeting conducted on January 4, 2007, in an attempt to show that Striker lacked the standing or capacity to vote its shares. However, the evidence that Striker did not vote its shares at

that meeting does not establish that it could not vote them, nor that it did not own them on the petition date. Furthermore, the Code definition does not require that a party have the ability to vote its shares; ownership alone is sufficient. *See In re Interlink Home Health Care, Inc.*, 283 B.R. 429, 436 (Bankr. N.D. Tex. 2002) [containing an extensive discussion of the modifying clause, "with power to vote," and its inapplicability as a modifier of either owns or controls, as contained in the definition of an affiliate]. Thus, the preponderance of the evidence established that Striker owns at least 20 % of the voting shares of Reichmann.

The evidence additionally established that Striker owns 70% of Emergent, which in turn owns 100% of Freedom. Therefore, Striker indirectly controls at least 20 percent of the outstanding voting shares of Freedom. Because Striker directly or indirectly owns or controls at least 20 percent of the outstanding voting shares of both Reichmann and Freedom, Freedom and Reichmann are, in fact, affiliates based upon the existence of the requisite horizontal relationship upon which affiliate status is conferred by the second prong of §102(B) of the Bankruptcy Code. Thus, this Court has the power under Fed. R. Bankr. P. 1014(b) to determine the proper district for the adjudication of the Freedom case as well as the Reichmann case.

*Transfer of Venue*

Because Reichmann and Freedom are affiliates, their symbiotic relationship arising from their transportation contracts virtually mandates a joint administration of their cases

before one court in the interests of judicial economy and in order to avoid the pitfalls which would undoubtedly arise if inconsistent rulings were to be issued regarding the rights arising from this pivotal relationship. Thus, the transfer of one of the cases is mandated. So where should these soon-to-be-jointly-administered cases be adjudicated?

Despite the preponderance of evidence that the Southern District of Texas is a proper venue for Freedom's bankruptcy case, Reichmann, the Reichmann Committee and Emergent argue that Freedom's case should be transferred to this district.[8] They allege that there has been significant progress achieved here in the Reichmann reorganization effort, particularly as opposed to that which has occurred in Freedom's case,[9] and that efficiency alone dictates that venue of the affiliated cases be maintained in the Eastern District. Freedom and the Freedom Committee assert that the Eastern District is a wholly inappropriate venue for either case, but its current venue in the Corpus Christi Division of the Southern District of Texas is an appropriate venue for both debtors. The parties have attempted to address the oft-cited *Commonwealth* considerations regarding whether a

---

[8] The evidence also demonstrates that proper venue for both cases would also lie in the Northern District of Texas. Though this Court may possess the power under Rule 1014(b) to order the transfer of both cases to the Northern District, it should defer from the exercise of such power when a sister court already has proper venue over one of the cases. The Court would also note that no party requested a transfer of either case to the Northern District.

[9] This, of course, is primarily due to the stay imposed by Rule 1014(b).

transfer would be "in the interests of justice or for the convenience of the parties,"[10] which have been applied to that standard under both 28 U.S.C. §1412[11] and Fed. R. Bankr. P. 1014(b),[12] These considerations would take preeminence when contemplating a choice between two districts in which proper venue would lie. But that is not the circumstance presented here.

The evidence is clear that Reichmann acquired a very nominal amount of property in this locale immediately prior to its filing in an attempt to manufacture a not-so-colorable claim for venue. Indeed, the Debtor failed to demonstrate that it owns any significant assets or conducts any significant operations within the boundaries of the Eastern District of Texas. Though it provided plenty of lists, the Debtor could not

---

[10] In construing virtually identical transfer of venue provisions under the old Bankruptcy Act, the Fifth Circuit in *Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d. 1239, 1247 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980), endorsed consideration of the following six (6) factors:

(1) the proximity of the creditors of every kind to the Court;
(2) the proximity of the debtor to the Court;
(3) the proximity of the witnesses necessary to the administration of the estate;
(4) the location of the assets;
(5) the economic administration of the estate; and
(6) the necessity for ancillary administration,

with the promotion of the economic and efficient administration of the estate standing as the dominant factor.

[11] *See, e.g., In re Moss*, 249 B.R. 411, 425 (Bankr. N.D. Tex. 2000).

[12] *See, e.g., In re Malden Mills Indus., Inc.,* 2007 WL 140818, at *6 (Bankr. D. Mass. Jan. 22, 2007).

identify which, if any, of the Eastern District leases were actually producing, nor if any income was actually derived from such leases.  Proper venue of the Reichmann case simply does not lie in this district.

Notwithstanding the dearth of Reichmann contacts with this district, it is true that no pre-petition Reichmann creditor has complained of proceeding before this Court. Indeed not only Reichmann, but the Reichmann Committee and its counsel, and other creditors have articulated support for the adjudication of this case in this district.  Further, it is likely true that many of the participants in both of these cases conduct business in a variety of locales and there is little evidence before the Court that adjudicating these cases in this district would actually impose any type of hardship upon anyone.  Finally, the Court must acknowledge that it is professionally satisfying for any judge to be presented with a complex case in which skilled, experienced attorneys will practice their craft.

However, despite those considerations, and though no bankruptcy court with a docket of any size can commit its time and resources to independently investigate the propriety of venue in each case brought before it, the existence of such circumstances cannot justify the maintenance of a bankruptcy case in an improper district once the impropriety of the filing party's actions have come to light.  While it is disturbing enough that Reichmann attempted to manufacture venue in this district and then subsequently

misrepresented the location of its principal assets in its petition, that misconduct certainly cannot be rewarded by allowing it to serve as the basis upon which the venue of an affiliated debtor's case will be transferred from a proper district to an improper one.

Thus, the Reichmann motion to transfer venue of Freedom's case must be denied and, because the relationship between these entities mandates that the cases proceed jointly before a single forum in order to promote the efficient and judicious administration of these estates, the Reichmann case must be transferred to the Corpus Christi Division of the Southern District of Texas for further adjudication.  To the extent that this decision causes confusion or administrative obstacles for Reichmann creditors, this Court is confident that the transferee court will provide remedies for such problems. To the extent that this decision creates ill effects for Reichmann itself, such suffering is wholly self-inflicted due to its venue manipulation scheme and any adverse impact generated thereby is substantially outweighed by the need for joint administration of these cases in one locale — a locale in which venue properly lies.  Accordingly, the motion by Reichmann to transfer venue of the Freedom case from Corpus Christi to Tyler is denied and the cross-motion by Freedom and the Freedom Committee to transfer venue of the Reichmann case to Corpus Christi is granted.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[13] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  Appropriate orders will be entered which are consistent with this opinion.

Signed on 03/17/2007

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[13] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.