**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-20804 |
| | § | |
| | § | CHAPTER 11 |
| REICHMANN PETROLEUM CORP. | § | |
| | § | |
| Debtor | § | |
| | § | |

_____

**SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED**
_____

NELIGAN FOLEY LLP

Patrick J. Neligan, Jr.
TBN: 14866000
pneligan@neliganlaw.com
Douglas J. Buncher
TBN: 03342700
dbuncher@neliganlaw.com
David Ellerbe
TBN: 06530600
dellerbe@neliganlaw.com
1700 Pacific Avenue
Suite 2600
Dallas, Texas 75201
Phone: (214) 840-5300
Fax: (214) 840-5301

IRELAND, CARROLL & KELLEY,
P.C.

Patrick Kelley
TBN: 11202500
patkelley@icklaw.com
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Phone: (903) 561-1600
Fax: (903) 581-1071

**COUNSEL FOR REICHMANN**
**PETROLEUM CORPORATION**

THOMPSON & KNIGHT LLP

Rhett G. Campbell
TBN: 03714500
rhett.campbell@tklaw.com
Randy W. Williams
TBN: 221566850
randy.williams@tklaw.com
333 Clay St., Suite 3300
Houston, TX 77002
Phone: (713) 654-8111
Fax: (713) 654-1871

JASON R. SEARCY & ASSOCIATES, P.C.

Jason R. Searcy
TBN: 17953500
jsearcy@jrsearcylaw.com
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Phone: (903) 757-3399
Fax: (903) 757-9559

**COUNSEL FOR THE OFFICIAL UNSECURED**
**CREDITORS' COMMITTEE**

Dated: April 24, 2008

# TABLE OF CONTENTS

**ARTICLE I** DEFINITIONS, CONSTRUCTION, AND INTERPRETATION.......................1

**ARTICLE II** UNCLASSIFIED CLAIMS ................................................................**14**

2.01.   Administrative Claims. .............................................................................14
2.02.   Priority Tax Claims..................................................................................16
2.03.   U.S. Trustee Fees. ...................................................................................16

**ARTICLE III** CLASSIFICATION OF CLAIMS AND INTERESTS ...................**16**

3.01.   Claims and Interests..................................................................................16

**ARTICLE IV** IDENTIFICATION OF UNIMPAIRED AND IMPAIRED ...........**20**

4.01.   Unimpaired Claims ...................................................................................20
4.02.   Impaired Claims and Interests ...................................................................20
4.03.   Controversy Concerning Impairment ........................................................20

**ARTICLE V** TREATMENT OF CLAIMS AND INTERESTS ............................**20**

5.01.   Other Priority Claims – Class 1 .................................................................20
5.02.   Secured Tax Claims – Class 2 ...................................................................20
5.03.   Secured M&M Lien Claims – Class 3 ........................................................21
5.04.   Other Secured Claims – Class 4 ................................................................21
5.05.   Unassigned Working Interest Claims – Class 5............................................22
5.06.   Royalty Interest Claims – Class 6 ..............................................................22
5.07.   Convenience Claims – Class 7 ...................................................................22
5.08.   General Unsecured Claims – Class 8 ..........................................................23
5.09.   Subordinated Claims – Class 9 ..................................................................23
5.10.   Doughty Secured Claim – Class 10 ...........................................................23
5.11.   Interests in the Debtor – Class 11 .............................................................24

**ARTICLE VI** THE CREDITOR TRUST......................................................**24**

6.01.   Function of Creditor Trust .......................................................................24
6.02.   Transfer of Property to Creditor Trust ......................................................25
6.03.   Transfer and Assertion of Causes of Action, Defenses and Counterclaims ...................25
6.04.   Creditor Trust Action and Governance ......................................................26

**ARTICLE VII** MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN ........................................................................................**26**

7.01.   Introduction.............................................................................................26
7.02.   Plan Funding ...........................................................................................26

7.03.   Debtor's Activities Post-Effective Date..........................................................27
7.04.   Effectuating Documents; Further Transactions .................................................32
7.05.   Creditors Committee and Plan Committee .......................................................32
7.06.   Dissolution of the Debtor................................................................................34

**ARTICLE VIII TREATMENT OF M&M LIEN CLAIMS.......................................35**

8.01.   General Treatment of Allowed M&M Lien Claims ..........................................35
8.02.   M&M Lien Agent ............................................................................................35
8.03.   Accounts and Reserve.....................................................................................36
8.04.   Distribution to Holders of Allowed Class 3 Claims .........................................36
8.05.   Unsecured or Undersecured M&M Lien Claims ..............................................36
8.06.   Allowed Amount and Perfection of M&M Lien Claims ...................................36
8.07.   Valuation of Secured M&M Lien Claims.........................................................37
8.08.   Treatment of M&M Lien Subclasses as to Which the Debtor's Uncontested Interest Constituting the M&M Lien Subclass Collateral is Sold Pursuant to a Sale Approved by the Bankruptcy Court Order Entered on or Before the Effective Date............................38
8.09.   Treatment of M&M Lien Subclasses as to Which the Debtor's Uncontested Interest Constituting the M&M Lien Subclass Collateral is Not Sold Pursuant to a Sale Approved by the Bankruptcy Court Order Entered on or Before the Effective Date........................39
8.10.   Treatment of M&M Lien Claims Encumbering Settling Unassigned WIOs Electing the Section 9.03(a)(1) Assignment Settlement Interest Option and/or Settling Late-Assigned WIOs......................................................................................................42
8.11.   Treatment of M&M Lien Claims Encumbering Settling Unassigned WIOs Electing the Section 9.03(a)(2) WIO Sales Proceeds Option .................................................43
8.12.   Application of Distributions Pursuant to an M&M Lien/WIO Settlement.......................44
8.13.   Post-Effective Date Interest ............................................................................44
8.14.   Assignment of Rights to Payments from Unassigned WIOs and Late-Assigned WIOs ...44
8.15.   Binding Effect of Plan Settlements and M&M Lien/WIO Settlements...........................44
8.16.   Claims Against Non-Settling Unassigned WIOs and Non-Settling Late-Assigned WIOs45
8.17.   Liens.................................................................................................................46
8.18.   Procedures Order Governs WIO Suspense Funds and Debtor's Suspense Funds.............46

**ARTICLE IX TREATMENT OF UNASSIGNED WORKING INTEREST CLAIMS...............................................................................................46**

9.01.   General Treatment:  settlement or litigation .....................................................46
9.02.   Election to settle or litigate .............................................................................46
9.03.   Settlement option. ...........................................................................................47
9.04.   Litigation option..............................................................................................52
9.05.   Treatment Pending Allowance or Disallowance................................................55
9.06.   Payment of Certain Expenses by Unassigned WIOs .........................................55
9.07.   Unassigned Working Interest Claims Related to Expired Leases .....................................55

**ARTICLE X** TREATMENT OF LATE-ASSIGNED WORKING
INTERESTS .................................................................................................56

10.01. Election by Late-Assigned Interest Holders ......................................56
10.02. Payment of Allowed M&M Lien Claims by Late-Assigned Interest Holders..................56
10.03. Retention of Liens by M&M Lien Claimants as Against Late-Assigned Interests ...........58
10.04. Potential Avoidance of Late-Assigned Interests ................................58

**ARTICLE XI** TREATMENT OF EXECUTORY CONTRACTS ...........................................58

11.01. General Treatment of Executory Contracts: Rejected .......................58
11.02. Cure Payments and Release of Liability................................................59
11.03. Bar to Rejection Claims ......................................................................59
11.04. Rejection Claims .................................................................................59
11.05. Compensation, Benefit, and Pension Programs ..................................60

**ARTICLE XII** CONDITIONS TO CONFIRMATION DATE AND
EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION ...............................60

12.01. Conditions Precedent to Confirmation Date .....................................60
12.02. Conditions Precedent to the Effective Date ......................................60
12.03. Binding Effect .....................................................................................61
12.04. Discharge of Debtor ...........................................................................61
12.05. Injunction ............................................................................................62
12.06. Effectuating Documents; Further Transactions; Timing ...................62
12.07. Exculpation ..........................................................................................63

**ARTICLE XIII** CLAM OBJECTIONS AND DISTRIBUTIONS .........................................63

13.01. Objections to Claims and Interests .....................................................63
13.02. Objection Deadline .............................................................................63
13.03. Settlement of Objections to Claims or Interests ...............................63
13.04. No Interest on Claims .........................................................................64
13.05. Notices of Claims Under 506(b) .........................................................65
13.06. Setoffs and No Waiver.........................................................................65
13.07. Duty to Disgorge Overpayments ........................................................66
13.08. Reserve Funds .....................................................................................66
13.09. Procedures for Treating and Resolving Disputed and Contingent Claims ......................66
13.10. Distributions Under the Plan ..............................................................68

**ARTICLE XIV** VOTING AND EFFECT OF REJECTION BY ...........................................69

14.01. Impaired Classes to Vote ....................................................................69
14.02. Acceptance by Classes.........................................................................69
14.03. Section 1129(b) Cramdown ................................................................69

**ARTICLE XV** RETENTION OF JURISDICTION .................................................................69

15.01. Jurisdiction .................................................................................................69
15.02. Examination of Claims ..............................................................................70
15.03. Determination of Disputes .........................................................................70
15.04. Additional Purposes ..................................................................................70
15.05. Failure of the Bankruptcy Court to Exercise Jurisdiction.........................72

**ARTICLE XVI** MISCELLANEOUS PROVISIONS ...............................................72

16.01. General Notices.........................................................................................72
16.02. Plan Supplement .......................................................................................73
16.03. Exemption From Transfer Taxes ...............................................................73
16.04. Asserting and Curing Default Under the Plan ...........................................73
16.05. Compliance with Tax Requirements` .........................................................74
16.06. Revocation or Withdrawal of the Plan.......................................................74
16.07. Modification of the Plan ............................................................................75
16.08. Due Authorization......................................................................................75
16.09. Implementation ..........................................................................................75
16.10. Execution of Documents ...........................................................................75
16.11. Bankruptcy Restrictions ............................................................................75
16.12. Other Documents and Actions ..................................................................76
16.13. Term of Injunctions or Stays.....................................................................76
16.14. Integration Clause .....................................................................................76
16.15. Interpretation .............................................................................................76
16.16. Severability of Plan Provisions..................................................................76
16.17. Governing Law ..........................................................................................77
16.18. Time ...........................................................................................................77

Reichmann Petroleum Corp. ("Reichmann" or the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee") file this Second Amended Joint Plan of Reorganization, as Modified, pursuant to section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties, results of operations, projections for future operations, risk factors, a summary and analysis of the Plan and certain related matters.

## ARTICLE I
### DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, provided, that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement. In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules to the Plan are incorporated herein. **PLEASE NOTE that all Exhibits to the Plan and any Plan Documents have been, or will be, filed electronically with the Bankruptcy Court. Copies of those Exhibits and Plan Documents may be viewed and/or downloaded from the Bankruptcy Court's PACER website. Further, the Debtor will provide copies of any or all of the Exhibits to the Plan and the Plan Documents, at the Debtor's expense, upon written request submitted to the Debtor's counsel at the address provided in Section 16.01 of the Plan.**

1.01.   *"Administrative Claim"* means a Claim for payment of an administrative expense of a kind within the scope of section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) actual, necessary costs and expenses of preserving the Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered, (b) Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, (c) all fees and charges assessed against the Estate under the Bankruptcy Code or under chapter 123 of title 28 of the United States Code, and (d) any claim determined by a Final Order to be entitled to administrative priority and arising from or related to the expiration, termination, or lapse of any leasehold or mineral interest of the Debtor.

1.02.   *"Allowance Date"* means the date on which a Claim becomes an Allowed Claim.

1.03.   *"Allowed"*, with respect to a Claim other than an Administrative Claim, or any portion thereof, means such a Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules or any amendment thereof as neither disputed, contingent nor unliquidated and for which no timely proof of Claim was filed, (d) for which a proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or the

Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan; with respect to an Administrative Claim, means an Administrative Claim for which a timely request for payment has been made in accordance with the Plan that has been allowed by a Final Order of the Bankruptcy Court; and with respect to an Interest, means any Interest that appears, as of the Voting Deadline, in the equity register maintained by or on behalf of the Debtor.

**1.04.** *"Allowed M&M Lien Claim"* means the Allowed amount of an M&M Lien Claim without regard to the value of the relevant M&M Lien Subclass Collateral.

**1.05.** *"Assets"* means Property of the Estate.

**1.06.** *"Assigned WIO"* means a party who owns a working interest in a Reichmann Well or a Non-Reichmann Well and who received, or will receive, an assignment from Reichmann, either before the Petition Date or after the Petition Date pursuant to an order of the Bankruptcy Court and/or an M&M Lien/WIO Settlement, to reflect such working interest.

**1.07.** *"Avoidance Action"* means any claim or cause of action arising under Chapter 5 of the Bankruptcy Code including, but not limited to, 11 U.S.C. §§ 506(c), 544, 545, 547, 548, 549, 553 and 550.

**1.08.** *"Ballot"* means the form or forms distributed to those Holders of impaired Claims and impaired Interests on which is to be indicated the acceptance or rejection of the Plan and such other matters and elections as required under this Plan, the Disclosure Statement or Order of the Bankruptcy Court.

**1.09.** *"Ballot Deadline"* means December 7, 2007, the deadline set by the Bankruptcy Court for the receipt of Ballots for accepting or rejecting the Amended Joint Plan of Reorganization, docket no. 1189.

**1.10.** *"Bankruptcy Case"* as used herein means the chapter 11 proceeding of Reichmann Petroleum Corp., Case No. 06-20804 pending in the Bankruptcy Court.

**1.11.** *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.12.** *"Bankruptcy Court"* means the Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, or such other court having jurisdiction over the Bankruptcy Case.

**1.13.** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.14.** *"Business Day"* means any day on which commercial banks are open for business in Dallas, Texas.

**1.15.** *"Cash"* means legal tender of the United States of America.

**1.16.** *"Cause of Action"* means all causes of action, rights, claims and demands against any Persons that the Debtor or the Debtor-in-Possession (and the Estate) owns or has an interest in or can assert in any fashion, or which could be asserted by the Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as Debtor in Possession, including but not limited to all Avoidance Actions and actions under 11 U.S.C. § 510 to subordinate Claims, and all proceeds of and recoveries of same.

**1.17.** *"Claim"* shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.18.** *"Collateral"* means any property or an interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien or Security Interest to secure the payment or performance of a Claim, which Lien or Security Interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.19.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.20.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128, scheduled to commence on April 15, 2008, at 9:00 a.m. Central Time, and as may be continued from time to time, on confirmation of the Plan.

**1.21.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22.** *"Convenience Claim"* means an Unsecured Claim that is (a) Allowed in the amount of $500.00 or less, or (b) more than $500.00 but as to which the Holder has elected, on a timely basis, to reduce the Allowed amount thereof to $500.00.

**1.23.** *"Creditor"* means any Holder of a Claim as of the Petition Date.

**1.24.** *"Creditors Committee"* means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case by the United States Trustee pursuant to section 1102(a) of the Bankruptcy Code.

**1.25.** *"Creditor Trust"* means that certain trust established pursuant to Article VI and Section 7.04 of the Plan and the Creditor Trust Agreement for the purposes, *inter alia,* of prosecuting or otherwise recovering, developing, and liquidating Assets of the Estate, resolving certain Claims and Causes of Action of the Debtor, and making Distributions to Holders of Allowed Claims and, if applicable, Holders of Allowed Interests in accordance with the Plan.

**1.26.** *"Creditor Trust Agreement"* means that certain trust agreement to be entered into pursuant to the Plan, under which the Creditor Trust will be established.  The Creditor Trust Agreement will be filed with the Bankruptcy Court no later than ten (10) days before the commencement of the Confirmation Hearing.

**1.27.** *"Creditor Trustee"* means the person appointed as Creditor Trustee pursuant to this Plan or the terms of the Creditor Trust Agreement.

**1.28.** *"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.29.** *"Debtor"* means Reichmann Petroleum Corp., including, as the context may require, Reichmann Petroleum Corp., reorganized pursuant to the Plan, from and after the Effective Date.

**1.30.** *"Debtor's Suspense Funds"* means the total amount of funds required by the Procedures Order to be deposited into the DIP Revenue Account attributable to the Unassigned Working Interest of a Settling Unassigned WIO minus the WIO Suspense Funds attributable to such Unassigned Working Interest, in each case subject to the terms of an applicable M&M Lien/WIO Settlement.

**1.31.** *"Debtor-in-Possession"* means the Debtor in its capacity as a debtor in possession in this Bankruptcy Case under 11 U.S.C. §§ 1107(a) and 1108.

**1.32.** *"DIP Revenue Account"* means the bank account established by the Debtor (account number 3755538507 at Bank of America, styled the Reichmann Debtor in Possession Revenue Account), which holds the proceeds from the sale of oil, gas and other hydrocarbons or condensates produced by or from a Reichmann Well, net of payments to Royalty Interest Owners and payments to Reichmann for its working interests in the Reichmann Wells, and which account the Debtor shall transfer on the Effective Date to the Creditor Trust pursuant to Section 6.02 of the Plan.

**1.33.** *"Disallowed,"* when used with respect to a Claim, shall mean a Claim or a portion thereof that (a) has been disallowed by a Final Order, (b) identified in the Schedules in an amount of zero dollars or as contingent, unliquidated or disputed and as to which, if proper notice was given or otherwise received, a proof of Claim was not filed by the Bar Date (unless a later filing of a Proof of Claim was authorized by a Final Order of the Bankruptcy Court), or (c) is not identified in the Schedules or as to which, if proper notice was given or otherwise received, no proof of Claim has been filed or deemed filed by the Bar Date.

**1.34.** *"Disclosure Statement"* means the Debtor's Amended Disclosure Statement with respect to the Plan, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.35.** *"Disputed Claim"* means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules but as to which a proof of Claims has been timely, or deemed timely, filed with the Bankruptcy Court; (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (e) as to which an objection has been, or may be, timely filed and has not been

overruled by a Final Order.  To the extent an objection related to the allowance of only a part of a Claim has been timely filed, such Claim shall be a Disputed Claim only to the extent of the objection.  Disputed Claims shall include Disputed M&M Lien Claims and the Unassigned Working Interest Claims of Non-Settling Unassigned WIOs.

     **1.36.**  ***"Disputed Interest"*** means an Interest that is not Allowed.

     **1.37.**  ***"Disputed M&M Lien Claim"*** means, as to an M&M Lien Claim alleged to be secured by a Lien, any portion thereof that is neither an Allowed M&M Lien Claim nor a Disallowed M&M Lien Claim, including, but not limited to, an M&M Lien Claim that is the subject of an objection filed with the Bankruptcy Court by the Debtor, the Creditor Trust, or any other party in interest (including any Unassigned WIO) and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

     **1.38.**  ***"Disputed Lien Deposit"*** shall have the meaning ascribed to such term in the M&M Lien Agent Agreement.

     **1.39.**  ***"Disputed Lien Reserve"*** shall have the meaning ascribed to such term in the M&M Lien Agent Agreement.

     **1.40.**  ***"Distribution"*** means the property, if any, required by the Plan to be distributed to the Holders of Allowed Claims and Holders of Allowed Interests.

     **1.41.**  ***"Distribution Date"*** means, when used with respect to a particular Claim, the later of (a) the Effective Date, or (b) the Allowance Date.

     **1.42.**  ***"Distribution Reserve Account(s)"*** means the segregated account or accounts established and maintained by the Creditor Trustee from the assets to be distributed to or for the benefit of the Holders of Allowed Claims or Interests in the Bankruptcy Case.

     **1.43.**  ***"Doughty Secured Claim"*** means the claim arising from a promissory note in the original amount of $1,875,000 executed by Reichmann in September 2006, made payable to Erik Doughty, and allegedly secured by Liens on certain real properties located in Duval, Ellis and Johnson Counties, Texas, including the Frost Bank lease.

     **1.44.**  ***"Effective Date"*** means the first Business Day on which no stay or motion for a stay of the Confirmation Order is in effect that is after ten (10) days (as calculated in accordance with Federal Rule of Bankruptcy Procedure 9006(a)) following the Confirmation Date and all conditions to the Effective Date have been met or waived.  The Debtor will file and serve notice of the Effective Date within two (2) Business Days after its occurrence.

     **1.45.**  ***"Estate"*** means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

     **1.46.**  ***"Executory Contract"*** means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.47.** **_"Face Amount"_** means (a) as to a Disputed or Disallowed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, (b) as to an M&M Lien Claim (other than an Allowed M&M Lien Claim or a Disallowed M&M Lien Claim), the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (c) as to an Allowed Claim (other than an Allowed M&M Lien Claim), the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor or the Creditor Trustee, as applicable.  The Face Amount shall include any amounts claimed in a timely filed Notice of Claim Under 506(b).

**1.48.** **_"Fee Application"_** means an application for the allowance of a Fee Claim.

**1.49.** **_"Fee Claim"_** means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.50.** **_"Final Decree"_** means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022, which shall, among other things, close the Bankruptcy Case.

**1.51.** **_"Final Order"_** means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

**1.52.** **_"Formula Amount"_** means the portion of the aggregate Allowed M&M Lien Claims that shall be paid by Settling Unassigned WIOs and Settling Late-Assigned WIOs pursuant to an M&M Lien/WIO Settlement, or Article IX or Article X of the Plan, as applicable.

**1.53.** **_"Garb Report"_** means the report produced by Forest A. Garb & Associates, Inc., estimating the values of the Debtor's interests (including the Unassigned Working Interests) in certain hydrocarbon-producing properties in Texas, dated as of June 1, 2007 and any amendments thereof or supplements thereto.

**1.54.**   *"General Unsecured Claim"* means an Unsecured Claim other than a Convenience Claim.

**1.55.**   *"Holder"* means a Person who is the beneficial owner of a Claim or Interest. For purposes of a Distribution, a Person must be a Holder as of the Distribution Date. For purposes of voting to accept or reject the Plan, a Person must be a Holder as of the Voting Record Date.

**1.56.**   *"Interest"* means any "equity security" (as defined in section 101(16) of the Bankruptcy Code) in the Debtor.

**1.57.**   *"Late-Assigned WIO Election Form"* the form that was mailed to Late-Assigned WIOs with the solicitation package for voting on the Plan, pursuant to which a Late-Assigned WIO had the opportunity to elect to pay a portion, as determined by the Formula Amount, of the Allowed M&M Lien Secured Claims attributable to its Late-Assigned Working Interest or to have its Late-Assigned Interest remain subject to any relevant M&M Liens pursuant to Section 10.03 of the Plan.

**1.58.**   *"Late-Assigned Working Interest"* means an Assigned WIO whose working interest in a Reichmann Well or a Non-Reichmann Well was held of record by Reichmann as of the date an M&M Lien Claimant commenced providing services, materials or equipment to the subject lease, as reflected on the WIO Schedules attached hereto as Exhibits 1 and 2.

**1.59.**   *"Late-Assigned WIO"* means a party that owns a Late-Assigned Working Interest.

**1.60.**   *"Lien"* has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code and shall include a "statutory lien" as defined in section 101(53) of the Bankruptcy Code.

**1.61.**   *"M&M Lien Agent"* means Charles Gebhart, the lien agent appointed under some or all of the M&M Lien/WIO Settlements, or any entity formed by the M&M Lien Agent for the purpose of performing the functions of the M&M Lien Agent, or any successor thereto appointed pursuant to the M&M Lien Agent Agreement.

**1.62.**   *"M&M Lien Agent Agreement"* means an agreement substantially in the form of Exhibit 3 to the Plan as same may be amended prior to the Confirmation Date.

**1.63.**   *"M&M Lien Claim"* means a Claim for furnishing services, materials or equipment for operations on oil and gas leases or wells owned by Reichmann as to which a valid and timely filed Lien has been properly perfected under Chapter 56 of the Texas Property Code or a similar statute of a state other than Texas statutory lien or privilege was granted by the laws of the state in which the property is located, or as to which a perfected Lien arises under the Texas Constitution, Article 16, section 37 or similar laws of a state other than Texas, to the extent enforceable in the Bankruptcy Case.

**1.64.**   *"M&M Lien Claimant"* means the Holder of an M&M Lien Claim.

**1.65.** **_"M&M Lien Schedule"_** means Exhibit 4 to the Plan, which lists, _inter alia,_ each M&M Lien Claimant known to the Debtor, each well subject to an M&M Lien Claim, and the amount of each M&M Lien Claim asserted by an M&M Lien Claimant, and identifies whether the Debtor disputes the asserted amount of the M&M Lien Claim or the validity or priority of the Lien asserted by the M&M Lien Claimant.

**1.66.** **_"M&M Lien Subclass Collateral"_** means the Collateral that is subject to all M&M Lien Claims with respect to a property that is the subject of a specific subclass of Class 3.

**1.67.** **_"M&M Lien/WIO Settlement"_** means any settlement approved by the Bankruptcy Court on or before the Effective Date among the Debtor and any Unassigned WIO, any Late-Assigned WIO, any Working Interest Owner, or any M&M Lien Claimant.

**1.68.** **_"Net Production Proceeds"_** means Production Proceeds minus the lease operating expenses, transportation charges, taxes, and royalties attributable thereto.

**1.69.** **_"Non-Reichmann Well"_** means an oil and gas well operated, as of the Petition Date, by a party other than Reichmann and/or any lease on which any such well is situated, as applicable to a particular Unassigned Working Interest.

**1.70.** **_"Non-Reichmann Well Debt"_** means the amount owed by a Settling Unassigned WIO to an operator of a Non-Reichmann Well pursuant to the formula set forth in Section 9.03(j) of the Plan.  The amounts that may be owed to operators of Non-Reichmann Wells, according to the Debtor's books and records, are set forth in Exhibit 13 to the Plan; provided, that the Debtor, the Creditor Trustee and any relevant Unassigned WIO reserve the right to contest such amounts as set forth in the Debtor's books and records or as may be asserted by an operator of a Non-Reichmann Well.

**1.71.** **_"Non-Reichmann WIO Schedule"_** means the schedule attached as Exhibit 2 to the Plan that lists all Working Interest Owners known to the Debtor who held or asserted a working interest in a Non-Reichmann Well as of the Petition Date.

**1.72.** **_"Non-Settling Late-Assigned WIO"_** means a Late-Assigned WIO that is not a Settling Late-Assigned WIO.

**1.73.** **_"Non-Settling Unassigned WIO"_** means an Unassigned WIO that is not a Settling Unassigned WIO.

**1.74.** **_"Notice of Claim Under 506(b)"_** means a notice filed with the Bankruptcy Court and sent to the Creditor Trust and the Debtor by a secured creditor, including an M&M Lien Claimant, in accordance with Section 13.05 of the Plan to assert a claim for interest, reasonable attorneys fees, costs and charges pursuant to 11 U.S.C. § 506(b), detailing the amounts claimed by such secured creditor thereunder.

**1.75.** **_"Objection Deadline"_** means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in Section 12.02 of the Plan, which date shall be 120 days after the Effective Date unless extended by order of the Bankruptcy Court.

**1.76.**   *"Operating Reserve Fund"* means the amount of Cash determined in accordance with this Plan to be held in reserve as of the Effective Date.  The initial Operating Reserve Fund shall be $500,000.

**1.77.**   *"Ordinary Course of Business"* shall have the meaning provided under 11 U.S.C. § 363 and judicial interpretations thereof.

**1.78.**   *"Other Priority Claim"* means any Claim that, if Allowed, would be entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

**1.79.**   *"Other Secured Claim"* means any Secured Claims against the Debtor other than a Secured Tax Claim or a Secured M&M Lien Claim.

**1.80.**   *"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

**1.81.**   *"Petition Date"* means December 8, 2006, the date the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code commencing the Bankruptcy Case.

**1.82.**   *"Plan"* means this Second Amended Joint Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

**1.83.**   *"Plan Committee"* means the Plan Committee created pursuant to Section 7.06 of the Plan.

**1.84.**   *"Plan Supplement"* or *"Plan Documents"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan filed no later than ten (10) days before the Confirmation Hearing and as may be amended thereafter.

**1.85.**   *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.86.**   *"Procedures Order"* means the "Order Granting Amended Motion of the Debtor For an Order to Establish Procedures for Collection of Proceeds From Sale of Oil and Gas, Payment to Interest Owners, Assessment of Joint Interest Billings, Exercise of Debtor's Setoff Rights, and Assignment of Interests in Leases to Unassigned Interest Owners," entered in the Bankruptcy Case on May 14, 2007, docket no. 379.

**1.87.**   *"Production Payment Assignment"* means a Production Payment Assignment substantially in the form of Exhibits 5 and 6 hereto, to be executed in favor of the M&M Lien Agent on behalf of Allowed M&M Lien Claims within a particular subclass of Class 3 pursuant to the terms of Article VIII of the Plan.  Such Production Payment Assignment shall provide for an assignment of 50% of the monthly gross production revenue attributable to the Settling Unassigned Working Interest or Settling Late-Assigned Working Interest to the M&M Lien

Agent for the benefit of the Allowed M&M Lien Claims in the relevant subclass of Class 3 until payout of the applicable Settling WIO's Formula Amount.  Exhibit 5 shall be applicable in instances in which there is no currently producing oil and gas well on the subject M&M Lien Subclass Collateral.  Exhibit 6 shall be applicable in instances in which the lease(s) comprising the subject M&M Lien Subclass Collateral are held by a producing oil and gas well.

**1.88.** *"Production Proceeds"* means the oil and gas revenue from a well received after December 8, 2006.

**1.89.** *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in the Bankruptcy Case and any professional seeking compensation or reimbursement of costs and expenses in connection with the Bankruptcy Case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.90.** *"Property of the Estate"* means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541 and all property disclosed in Debtor's Schedules and the Disclosure Statement, or acquired by the Debtor after the Petition Date.

**1.91.** *"Proponents"* means the Debtor and the Committee, jointly, as proponents of the Plan.

**1.92.** *"Pro Rata"* means, at any time, the proportion that the Face Amount of a Claim or an Interest in a particular Class bears to the aggregate Face Amount of all Claims or Interests (including Disputed Claims or Interests, but excluding Disallowed Claims or Interests) in that Class, unless the Plan provides otherwise.

**1.93.** *"Reichmann"* means Reichmann Petroleum Corp.

**1.94.** *"Reichmann Well"* means an oil and gas well operated, as of the Petition Date, by Reichmann and/or any lease on which any such well is situated, as applicable to a particular Unassigned Working Interest.

**1.95.** *"Reichmann WIO Schedule"* means the schedule attached as Exhibit 1 to the Plan that lists all Working Interest Owners known to the Debtor who held or asserted a working interest in a Reichmann Well as of the Petition Date.

**1.96.** *"Rejection Claim"* means a Claim by a party to an Executory Contract with the Debtor that has not been assumed by the Debtor pursuant to the Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.97.** *"Requisite Majority"* means Allowed M&M Lien Claimants holding at least sixty-six percent (66%) by dollar amount of all Allowed M&M Lien Claims with respect to a relevant property who timely respond to a proposed action.  The Allowed M&M Lien Claims of M&M Lien Claimants who fail to timely respond to a proposed action shall not be included in the calculation of the Requisite Majority.

**1.98.** *"Retained Asset"* means any interest, including, without limitation, any working interest, of the Debtor in any Reichmann Well or any Non-Reichmann Well, and any personal property of the Debtor used in connection with any such interest, that is not sold by the Debtor pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, which the Debtor shall retain after the Effective Date (and not transfer to the Creditor Trust) for the purpose of development or sale.

**1.99.** *"Royalty Interest Claim"* means a Claim, to the extent reflected in the Schedules or a proof of Claim, arising from or related to a royalty interest in a Reichmann Well.

**1.100.** *"Royalty Interest Owner"* means the owner of a royalty interest, whether a standard or overriding royalty interest, in any Reichmann Well.

**1.101.** *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

**1.102.** *"Secured Claim"* means a Claim secured by a Lien on or Security Interest in property of the Debtor, which Lien or Security Interest is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Collateral that secures payment of such Claim in accordance with 11 U.S.C. § 506. and taking into account any other Secured Claims with respect to such Collateral not inferior in priority to such Secured Claim or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.  Secured Claims shall include Claims secured by Liens or Security Interests junior in priority to existing Security Interests or Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all Liens or Security Interests senior in priority.  As used herein, Secured Claims shall include Secured M&M Lien Claims, Secured Tax Claims, and Other Secured Claims.

**1.103.** *"Secured M&M Lien Claim"* means an M&M Lien Claim that is a Secured Claim by virtue of (a) the provisions of Sections 8.06 and 8.07 of the Plan; or (b) a Final Order of the Bankruptcy Court that determines such M&M Lien Claim to be a Secured Claim, the Allowed amount of such Secured Claim, and the status of such Secured Claim as senior in priority as of the Petition Date under the applicable state law to the Holders of Unsecured Claims.  If a party has a Secured M&M Lien Claim on more than one mineral lease, its status for determining whether its claims are undersecured or oversecured will be determined on a lease by lease basis consistent with the provisions of this Plan which specify that Class 3 Secured M&M Lien Claims are placed in subclasses on a lease by lease basis.

**1.104.** *"Secured Tax Claim"* means any Claim for ad valorem taxes that is based on or assessed against any real or personal property of the Debtor and is secured as of the Effective Date by a Lien or Security Interest against such property, which Lien or Security Interest is valid, perfected and enforceable under applicable law and is not subject to avoidance under the

Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the assets or property securing such Claim.

**1.105.** *"Security Interest"* has the meaning ascribed to such term in section 101(51) of the Bankruptcy Code.

**1.106.** *"Settling Unassigned WIO"* means an Unassigned WIO who elects, or is deemed to elect, to settle its Unassigned Working Interest Claim pursuant to the terms of Article IX of the Plan or an M&M Lien/WIO Settlement, as the context requires.

**1.107.** *"Settling Late-Assigned WIO"* means a Late-Assigned WIO who elects, or is deemed to elect, to pay the Formula Amount pursuant to the terms of Article X of the Plan to cap its exposure to the Holders of Allowed M&M Lien Claims within a particular subclass of Class 3.

**1.108.** *"Settling Late-Assigned Working Interest"* means the Late-Assigned Working Interest asserted by a Settling Late-Assigned WIO.

**1.109.** *"Settling Unassigned Working Interest"* means the Unassigned Working Interest asserted by a Settling Unassigned WIO.

**1.110.** *"Settling WIO"* means a Settling Late-Assigned WIO and/or a Settling Unassigned WIO, as applicable.

**1.111.** *"Stipulated Value"* means, with respect to Unassigned Working Interests and Late-Assigned Working Interests, the value of such interests determined by reference to the Garb Report. The Garb Report projections are assumed to be accurate. The Garb Report projected net cash flow shall be discounted to present value on the following basis: (i) proved producing revenue – PV-10, (ii) proved behind pipe and proved non-producing revenue – PV-20, and (iii) proved undeveloped reserves – PV-30. The value of any property not evaluated in the Garb Report or otherwise sold by the Debtor or Reichmann will be determined by (i) the Bankruptcy Court or (ii) the agreement of the Creditor Trustee and the M&M Lien Agent. If subpart (ii) applies, the Creditor Trustee shall file with the Bankruptcy Court a notice of the terms of any such agreement. Any party in interest may file an objection to any such agreement with the Bankruptcy Court within twenty (20) days after the Creditor Trustee files such notice, and the Bankruptcy Court shall rule on the agreement and objection(s) pursuant to Bankruptcy Rule 9014. If no objection is timely filed, the agreement of the Creditor Trustee and the M&M Lien Agent shall be final and binding on all parties in interest.

**1.112.** *"Subordinated Claim"* means a Claim, other than the Doughty Secured Claim or an Administrative Claim or Class 5 Unassigned Working Interest Claim asserted by Shawn Cady, (a) arising in connection with the sale or purchase of a security of the Debtor or an Affiliate of the Debtor, (b) arising from a rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, (c) by an Insider or an Affiliate of the Debtor or by an entity of which the Debtor is an Insider or an Affiliate, (d) by a prepetition officer or director of the Debtor, (e) otherwise subordinated pursuant to 11 U.S.C. § 510, or (f) based on fines, penalties or punitive damages.

**1.113.** *"Trust Property"* means all property of the Creditor Trust, including without limitation, all property transferred to the Creditor Trust at any time and all other property incidental thereto that may be acquired by the Creditor Trust from time to time under the Creditor Trust Agreement or otherwise.

**1.114.** *"Unassigned WIO"* means a party that is identified on the WIO Schedules as owning or claiming to own an Unassigned Working Interest, subject to the terms of any M&M Lien/WIO Settlement.

**1.115.** *"Unassigned WIO Election Form"* means the form attached hereto as Exhibit 8 that was mailed to Unassigned WIOs with the solicitation package for voting on the Plan, pursuant to which an Unassigned WIO had the opportunity to elect to settle or litigate its Unassigned Working Interest Claim pursuant to Section 9.02 of the Plan and, if electing to settle, to elect to receive either an Assigned Settlement Interest or WIO Sales Proceeds pursuant to Section 9.03 of the Plan.

**1.116.** *"Unassigned Working Interest"* means, subject to the exclusions set forth below, a working interest in a Reichmann Well or a Non-Reichmann Well to which the Debtor holds record title, but as to which interest another party asserts that it paid or allegedly paid Reichmann for such working interest and either (a) has not received an assignment from Reichmann, either before the Petition Date or after the Petition Date pursuant to an order of the Bankruptcy Court, to reflect such working interest, as reflected on the WIO Schedules, or (b) received an assignment from Reichmann to reflect such working interest but such assignment was not duly recorded before the Petition Date, as reflected on the WIO Schedules.  The term Unassigned Working Interest does not include: (a) an interest in property described in an assignment instrument recorded after the Petition Date in favor of a Working Interest Owner pursuant to any M&M Lien/WIO Settlement or other order of the Bankruptcy Court, (b) an interest in property that, after the Petition Date and pursuant to an M&M Lien/WIO Settlement or other order of the Bankruptcy Court, will be assigned to a Working Interest Owner pursuant to an assignment instrument made by the Debtor to a Working Interest Owner, including any such assignment instrument that has not been executed or recorded as of the Effective Date, or (c) any working interest in a Reichmann Well or a Non-Reichmann Well that is identified on the WIO Schedules as being assigned.

**1.117.** *"Unassigned Working Interest Claim"* means any Claim, right or interest asserted by an Unassigned WIO, other than a Secured Claim or General Unsecured Claim asserted by an Unassigned WIO, that arises from or relates to an Unassigned Working Interest, including without limitation, an assertion by an Unassigned WIO that it is entitled to receive a written duly executed assignment of a working interest from Reichmann or to record a duly executed assignment of a working interest received from Reichmann before the Petition Date.

**1.118.** *"Unclaimed Property"* means any Distribution under the Plan that, for a period of one year after the applicable Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with the Creditor Trustee), is either (a) attributable to the Holder of an Allowed Claim that has failed to prepare, execute and return to the Creditor Trust an Internal Revenue Service Form W-9, (b) returned to the Creditor Trust as undeliverable, or (c) otherwise unclaimed.

**1.119.** *"Uncontested Interest"* means the Debtor's ownership interest in an oil and gas property other than that percentage which is subject to an Unassigned Working Interest Claim. The Uncontested Interest shall include any Unassigned Working Interest that is assigned to or retained by the Debtor as a result of a settlement with a Working Interest Owner, including any settlement pursuant to Article IX of this Plan, or a Final Order of the Bankruptcy Court.

**1.120.** *"Unsecured Claim"* means a Claim that is not a Secured Claim, an M&M Lien Claim (up to the value of the relevant M&M Lien Subclass Collateral), an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, or a Subordinated Claim, and shall include (a) any Claim arising from the rejection of an executory contracts or unexpired leases pursuant to 11 U.S.C. § 365 and (b) any Claim for subrogation arising from the payment, in whole or in part, of an M&M Lien Claim, a Secured Claim, or any other Claim against or obligation of the Debtor.

**1.121.** *"Voting Record Date"* means October 30, 2007.

**1.122.** *"WIO Expenses"* means the costs of acquiring and retaining leases, drilling, completing, maintaining, and operating an oil and gas well, and any severance taxes and handling, gathering, and transportation costs that pertain to a Reichmann Well or a Non-Reichmann Well, as applicable, and are allocable to a Working Interest Owner.  The WIO Expenses for a Settling Unassigned WIO attributable to a particular Unassigned Working Interest shall be calculated based on the percentage working interest resulting from the settlement election under Section 9.03 of the Plan.  For example, if a Settling Unassigned WIO claims a particular Unassigned Working Interest equal to 10.0% but as a result of electing to settle its Unassigned Working Interest Claims under Section 9.03 of the Plan such Unassigned WIO receives a Settlement Interest (as defined in Section 9.03) equal to 8.5%, then the WIO Expenses of such Unassigned WIO attributable to that particular Unassigned Working Interest will be calculated based on such 8.5% interest.

**1.123.** *"WIO Schedules"* means, collectively, the Reichmann WIO Schedule and the Non-Reichmann WIO Schedule.

**1.124.** *"WIO Suspense Funds"* means, as applicable, (a) 85% of funds required by the Procedures Order to be deposited into the DIP Revenue Account attributable to a Settling Unassigned Working Interest, or (b) all of the funds required by the Procedures Order to be deposited into the DIP Revenue Account attributable to a Late-Assigned Working Interest, in either instance after deducting lease operating expenses, transportation charges, taxes, and royalties attributable thereto, in each case subject to the terms of an applicable M&M Lien/WIO Settlement..

**1.125.** *"Working Interest Owner"* means an Assigned WIO or an Unassigned WIO, as applicable.

## ARTICLE II
## UNCLASSIFIED CLAIMS

**2.01.   Administrative Claims.**

(a)   **Time for Filing Administrative Claims.**   The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other

than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Proponents, and the Creditor Trustee within twenty (20) days after the filing of the applicable request for payment of an Administrative Claim.

(b)     **Time for Filing Fee Claims.**  Each Professional who holds or asserts an Administrative Claim that is a Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within forty-five (45) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged.  No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order or by consent of the Debtor and the Creditor Trustee.  Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Proponents, the Creditor Trustee, and the Professional to whose application the objections are filed within twenty (20) days after the filing of the applicable Fee Application.  No hearing may be held until the objection period has expired.

(c)     **Allowance of Administrative Claims.**  An Administrative Claim with respect to which notice has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)     **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer held by such Holder, Cash from the Creditor Trust equal to the Allowed amount of such Administrative Claim within five (5) Business Days following the Distribution Date.

(e)     **Ordinary Course of Business Claims.**  Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims.  Liabilities incurred in the Ordinary Course of Business will be paid by the Debtor or the Creditor Trust pursuant to the terms and conditions of the

transaction giving rise to such Administrative Claim, without any further action by the Holders of such Administrative Claim.

**2.02.   Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim, in full satisfaction, release and discharge of and exchange for such Clam, shall receive Cash from the Creditor Trust equal to the Allowed amount of such Priority Tax Claim on the later of (a) the thirtieth (30th) day after the Distribution Date, or (b) the last Business Day such taxes may be paid under applicable law without incurring penalties or interest, but in no event later than the fifth anniversary of the Petition Date.  Allowed Priority Tax Claims shall bear interest at the rate provided through 11 U.S.C. § 511 from the Petition Date through the date such Claims are paid in full.  Notwithstanding the foregoing, the Holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.

**2.03.   U.S. Trustee Fees.**  The Creditor Trust shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the most recent quarterly invoice prior to the Confirmation Date will be paid in full within thirty (30) days after the Effective Date.  After the Effective Date, the Creditor Trust shall pay United States Trustee quarterly fees as they accrue until the Bankruptcy Case is closed.  The Creditor Trust shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Bankruptcy Case remains open.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.01.   Claims and Interests.**  Claims (other than Administrative Claims, Fee Claims, Priority Tax Claims, and U.S. Trustee Fees) and Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| Class | Status |
|---|---|
| Class  1:  Other Priority Claims | Unimpaired |
| Class  2:  Secured Tax Claims | Impaired |
| Class  3:  Secured M&M Lien Claims, with the Allowed Secured M&M Lien Claims on each lease of the Debtor treated as a separate subclass, as follows:<br>Class 3.1          Arnold-Bryson<br>Class 3.2          C.L. Smith<br>Class 3.3          Caraway<br>Class 3.4          Cardwell<br>Class 3.5          Coalson<br>Class 3.6          Crouch<br>Class 3.7          Cuellar<br>Class 3.8          Doty-Jackson | Impaired |

| | | |
|---|---|---|
| Class 3.9 | E. Flores | |
| Class 3.10 | Fernando Garza | |
| Class 3.11 | Fernando Garza Deep | |
| Class 3.12 | Frost Bank | |
| Class 3.13 | Goen-Holman | |
| Class 3.14 | Gonzales West | |
| Class 3.15 | Good Friday | |
| Class 3.16 | Green-Harwell | |
| Class 3.17 | Greene | |
| Class 3.18 | H&D | |
| Class 3.19 | Hannibal | |
| Class 3.20 | Hardin County Wilcox | |
| Class 3.21 | Hastings Lopez | |
| Class 3.22 | Hinojosa | |
| Class 3.23 | JL Jones Heirs | |
| Class 3.24 | JM Cuellar NE | |
| Class 3.25 | Katherine Baker | |
| Class 3.26 | Kranenburg | |
| Class 3.27 | La Duquesa | |
| Class 3.28 | Laurel Minerals | |
| Class 3.29 | Lawrence | |
| Class 3.30 | MC Hyden | |
| Class 3.31 | Martinez | |
| Class 3.32 | Massey | |
| Class 3.33 | McCutchin | |
| Class 3.34 | Minns | |
| Class 3.35 | Moncrief | |
| Class 3.36 | Moore | |
| Class 3.37 | Pannell | |
| Class 3.38 | Parker-Betzel | |
| Class 3.39 | Peal Ranch | |
| Class 3.40 | Peters Ranch | |
| Class 3.41 | Pipes | |
| Class 3.42 | Poolville-Bradley | |
| Class 3.43 | Resendez | |
| Class 3.44 | Robinson | |
| Class 3.45 | Rose Scaling | |
| Class 3.46 | Shillinburg | |
| Class 3.47 | Tritt | |
| Class 3.48 | Uribe | |
| Class 3.49 | Vela | |
| Class 3.50 | Volpe | |
| Class 3.51 | White Spot | |
| Class 3.52 | Wilson Hancock | |
| Class 3.53 | Wolf | |
| Class 3.54 | All other Secured M&M Lien Claims other than those relating to the leases specified in Classes 3.1 through 3.53 above | |
| Class 4: | Other Secured Claims, with each such | Impaired |

Other Secured Claim treated as a separate subclass, as follows:

| | |
|---|---|
| Class 4.1 | 3T Enterprises LP d/b/a Taylor Trucking |
| Class 4.2 | ABC Nitrogen |
| Class 4.3 | Aquagen Engineers, LLC |
| Class 4.4 | Basin Tool Company |
| Class 4.5 | Battagello, Anthony |
| Class 4.6 | Brinkop, William and Michelle |
| Class 4.7 | Carrizo Oil & Gas, Inc. |
| Class 4.8 | Cirrus Holdings LLC |
| Class 4.9 | ConocoPhillips Co. |
| Class 4.10 | Dahlberg, John and Marilyn |
| Class 4.11 | Dell Financial Services, L.P. |
| Class 4.12 | [Intentionally blank] |
| Class 4.13 | Elva C. Stoltenberg Agency |
| Class 4.14 | Flatrock Compression, Ltd. |
| Class 4.15 | Geo Map Company |
| Class 4.16 | GMAC |
| Class 4.17 | GMAC[1] |
| Class 4.18 | Grace, Gary Jr. & Sandra Grace Morean |
| Class 4.19 | Grace, Gary Jr. |
| Class 4.20 | Grace, Gary R. & Susan Jr. |
| Class 4.21 | Graves, Richard G. |
| Class 4.22 | H&L Resources, LLC |
| Class 4.23 | Harding Company |
| Class 4.24 | Hartshorn Family Trust |
| Class 4.25 | Hartshorn, LLC |
| Class 4.26 | J&W Services & Equipment Co. |
| Class 4.27 | Kerogen Resources, Inc. |
| Class 4.28 | Kerr-McGee Oil & Gas Onshore, L.P. |
| Class 4.29 | Kirschman, James L. et al |
| Class 4.30 | Martin, Jeff |
| Class 4.31 | McClure, Don |
| Class 4.32 | McClure, Ron |
| Class 4.33 | Metano Energy, L.P. |
| Class 4.34 | Midwestern Mud Service |
| Class 4.35 | MJW, LLC |
| Class 4.36 | Musgrave Family LLC |

---

[1] GMAC filed two separate proofs of claim asserting secured claims, one (POC #3) in the amount of $9,696.06 and another (POC #4) in the amount of $27,496.69.

| | | |
|---|---|---|
| Class 4.37 | Musgrave, Thomas C. III | |
| Class 4.38 | Neumin Production Company | |
| Class 4.39 | Neely, Julissa | |
| Class 4.40 | Neely, Mary & Louis | |
| Class 4.41 | Neely, Mary K. | |
| Class 4.42 | Opti-Flow, LLC | |
| Class 4.43 | Pipeco Services, LP | |
| Class 4.44 | Precision Energy Services Inc. | |
| Class 4.45 | Quicksilver Resources, Inc. | |
| Class 4.46 | RBE, LLC | |
| Class 4.47 | Richman Oil Corporation & Peal Ranch Joint Venture | |
| Class 4.48 | South Barnett Resources, LLC | |
| Class 4.49 | Talley, Ken | |
| Class 4.50 | Texas Wyoming Drilling, Inc. | |
| Class 4.51 | The Gary and Kelly Grace Family Trust | |
| Class 4.52 | Thru Tubing Solutions | |
| Class 4.53 | Triangle USA Petroleum Corporation | |
| Class 4.54 | Volvo Financial Services | |
| Class 4.55 | Weatherford Canada Partnership | |
| Class 4.56 | Weaver, Lindsay A. Jr. | |
| Class 4.57 | Weaver, Suzanne & Bruce Binns | |
| Class 4.58 | Williams Production-Gulf Coast Company, L.P. | |
| Class 4.59 | Williams Production-Gulf Coast Company, L.P. | |
| Class 4.60 | Wynn-Crosby Partners I, Ltd. | |
| Class 4.61 | All other Other Secured Claims other than those specified in Classes 4.1 through 4.60 above | |
| Class 5: Unassigned Working Interest Claims | | Impaired |
| Class 6: Royalty Interest Claims | | Unimpaired |
| Class 7: Convenience Claims | | Impaired |
| Class 8: General Unsecured Claims | | Impaired |

| | |
|---|---|
| Class  9:  Subordinated Claims | Impaired |
| Class 10: Doughty Secured Claim | Impaired |
| Class 11: Interests in the Debtor | Impaired |

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND INTERESTS

### 4.01.    Unimpaired Claims

Claims against the Debtor in Classes 1 and 6 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

### 4.02.    Impaired Claims and Interests

Claims against the Debtor in Classes 2, 3, 4, 5, 7, 8, 9, and 10 and the Holders of Interests in the Debtor in Class 11 are impaired under the Plan and the Holders of those Claims and Interests are entitled to vote to accept or reject the Plan.

### 4.03.    Controversy Concerning Impairment

In the event of a controversy as to whether any Claim or Interest or any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

### 5.01.    Other Priority Claims – Class 1

(a)    **Impairment and Voting.**  Class 1 is not impaired under the Plan.  The Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  Except to the extent that a Holder of an Allowed Priority Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Priority Claim against the Debtor, in full satisfaction, release and discharge of and exchange for such Claim, shall receive Cash from the Creditor Trust in an amount equal to the Allowed amount of such Priority Claim no later than five (5) Business Days after the Distribution Date.  The foregoing notwithstanding, to the extent the Allowed amount of an Other Priority Claim asserting priority treatment under 11 U.S.C. §§ 507(a) (4) and (5) exceeds the statutory cap applicable to such Claim, such excess shall be treated as a General Unsecured Claim in Class 8.

### 5.02.    Secured Tax Claims – Class 2

(a)    **Impairment and Voting.**  Class 2 is impaired under the Plan.  The

Holders of Secured Tax Claims are entitled to vote to accept or reject the Plan.

(b)     **Treatment.**  With respect to any Allowed Secured Tax Claim for ad valorem property taxes for tax years prior to 2007, each Holder of such an Allowed Secured Tax Claim, in full satisfaction, settlement, release and discharge of each such Claim, shall receive, payment in Cash by the Creditor Trust in an amount equal to the Allowed amount of such Holder's Secured Tax Claim, to the extent not already paid.  The Holder of a Secured Tax Claim for ad valorem taxes for the tax years 2007 and thereafter shall retain all rights and remedies for payment thereof in accordance with the terms thereof.  The Creditor Trust may sell any Collateral subject to the Liens asserted by the Holder of an Allowed Secured Tax Claim and any such sale shall be free and clear of any such Liens with such Liens attaching to the proceeds of the sale in the same priority that existed as of the Petition Date or, if later, the date when such Liens attached.

### 5.03.   Secured M&M Lien Claims – Class 3

(a)     **Impairment and Voting.**  Class 3, including each subclass thereof, is impaired under the Plan.  Each Holder of a Secured M&M Lien Claim is entitled to vote to accept or reject the Plan.  Each Holder of a Secured M&M Lien Claim is deemed to be placed within a separate subclass of Class 3.  Accordingly, each such Class 3 Claim is, for purposes of accepting or rejecting the Plan and for receiving Distributions under the Plan, treated as though in a separate Class.

(b)     **Treatment.**  The treatment of Secured M&M Lien Claims is described in Article VIII of the Plan.

### 5.04.   Other Secured Claims – Class 4

(a)     **Impairment and Voting.**  Class 4, including each subclass thereof, is impaired under the Plan.  Each Holder of an Other Secured Claim is entitled to vote to accept or reject the Plan.  Each Holder of an Other Secured Claim is deemed to be placed within a separate subclass of Class 4.  Accordingly, each such Class 4 Claim is, for purposes of accepting or rejecting the Plan and for receiving Distributions under the Plan, treated as though in a separate Class.

(b)     **Treatment.**

(i)     Each Holder of an Allowed Other Secured Claim has, or is deemed to have, an Allowed Other Secured Claim to the extent of the value of its interest in its Collateral or the extent of its right of offset, as applicable.  The validity, extent, value, and priority of any Other Secured Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Creditor Trustee and the Holder of an Other Secured Claim.

(ii)     Each Holder of an Allowed Other Secured Claim, in full satisfaction, settlement, release and discharge of each such Claim and all Liens securing such Claim, shall receive, in the Creditor Trustee's sole discretion, either the conveyance of its Collateral or payment in Cash by the Creditor Trustee in an amount equivalent to the full amount of such Holder's Allowed Other Secured

Claim (or, as applicable, such Holder may exercise its right of offset or recoupment).  The timing of any such payment, and whether such payment shall be made in one lump sum or in periodic installments, shall be determined by the Creditor Trustee in its sole discretion.  Notwithstanding the foregoing, upon the sale by the Debtor or the Creditor Trustee of any Collateral that secures an Allowed Other Secured Claim, the Creditor Trustee shall pay all Allowed Other Secured Claims secured by such Collateral in Cash, in full (up to the amount of the net proceeds of the sale of the Collateral, in their relative order of priority) as soon as reasonably practicable following the Creditor Trustee's receipt of the proceeds of the sale of any such Collateral.

(iii)    In the event that any Allowed Other Secured Claim exceeds the value of the Collateral securing such Claim, after taking into account any other Allowed Other Secured Claim secured by a senior Lien on or Security Interest in the same Collateral, any such excess (exclusive of any post-petition interest, fees or other charges Allowed by a Final Order as part of that Allowed Other Secured Claim) shall constitute a General Unsecured Claim for purposes of the Plan, unless the Holder of such Claim has properly elected other treatment as may be permitted under applicable law.

### 5.05.   Unassigned Working Interest Claims – Class 5

(a)    **Impairment and Voting.**  Class 5 is impaired under the Plan.  Each Holder of an Unassigned Working Interest Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  The treatment of Unassigned Working Interest Claims is described in Article IX of the Plan.

### 5.06.   Royalty Interest Claims – Class 6

(a)    **Impairment and Voting.**  Class 6 is unimpaired under the Plan.   The Holders of Royalty Interest Claims are not entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  The Creditor Trustee shall pay all Allowed Royalty Interest Claims in full, in Cash, as soon as practicable after the Allowance Date.  Nothing in the Plan or in the Confirmation Order shall alter the rights, duties, and obligations of the Debtor, the Creditor Trustee, or the Royalty Interest Owners under the lease agreements between the Debtor and the Royalty Interest Owners.

### 5.07.   Convenience Claims – Class 7

(a)    **Impairment and Voting.**  Class 7 is impaired under the Plan.  Each Holder of a Convenience Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  Except to the extent that a Holder of an Allowed Convenience Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Unsecured Convenience Claim will be paid the lesser of (a) the Allowed amount of its Claim in full or (b) $500.00 in Cash.  Payments shall be made within

ninety (90) days after the Distribution Date.  Each Holder of a General Unsecured Class 8 Claim in excess of $500.00 that elects to convert its General Unsecured Claim to a Convenience Claim and receive $500.00 in full and final satisfaction of its Claim must so indicate its choice on its Ballot.

### 5.08.    General Unsecured Claims – Class 8

(a)    **Impairment and Voting.**  Class 8 is impaired under the Plan.  Each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  Except to the extent that a Holder of an Allowed General Unsecured Claim in Class 8 has been paid prior to the Effective Date, or agrees to a different treatment, after payment in full, of Claims in Classes 1 through 7, each Holder of an Allowed General Unsecured Claim shall receive from the Creditor Trust in full satisfaction, release and discharge of and in exchange for such Claim, a Pro Rata share of the Distributions available for Class 8 from the Creditor Trust.  The Creditor Trustee may make multiple Distributions to Holders of Allowed General Unsecured Claims.  The Creditor Trustee shall determine the amount and timing of such Distributions.

### 5.09.    Subordinated Claims – Class 9

(a)    **Impairment and Voting.**  Class 9 is impaired under the Plan.  Each Holder of a Subordinated Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment.**  The Holders of Allowed Subordinated Claims shall receive Pro Rata Distributions from the Creditor Trust after all Claims in Classes 1 through 8 and Class 10 are paid in full with interest as provided in Section 12.04 of the Plan.  It is not anticipated that there will be any Distributions to Holders of Class 9 Claims.

### 5.10.    Doughty Secured Claim – Class 10

(a)    **Impairment and Voting.**  Class 10 is impaired under the Plan.  The Holder of the Doughty Secured Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment.**

(i)    The Doughty Secured Claim shall be Allowed in the amount of $1,406,250.00.

(ii)    The Allowed Doughty Claim shall not include any interest from the Petition Date through the date such Claim is paid in full pursuant to this Section 5.10(b).  The Holder of the Allowed Doughty Secured Claim, in full satisfaction, settlement, release and discharge of such Allowed Claim and all Liens securing such Allowed Claim, shall receive interest-only payments in Cash from the Creditor Trust in the amount of five thousand dollars ($5,000.00) per month (no later than the 10th day of each month) commencing with the first full month after the Confirmation Date until the earlier of (A) the date the Debtor closes on a sale of its interests in the Frost Bank lease and (B) the first anniversary

of the Effective Date, plus a single payment in Cash to be made on the earlier of (A) the date the Debtor closes on a sale of its interests in the Frost Bank lease and (B) the first anniversary of the Effective Date in the full amount of the Allowed Doughty Secured Claim in the amount of $1,406,250.00. As a condition precedent to the foregoing payment of $1,406,250.00 to Doughty, at the closing of the sale of the Debtor's interests in the Frost Bank lease or, as applicable, on the first anniversary of the Effective Date, Doughty shall deliver to the Debtor (A) a release of all Liens related to the Doughty Secured Claim, including without limitation, any Liens on Estate property located in Duval County, Ellis County and/or Johnson County, Texas, and (B) a written, sworn affirmation that he has not assigned to any third party at any time any of the Liens, or any portion thereof, that secured or have secured the Doughty Secured Claim. The Debtor and the Creditor Trustee shall have authority to file the foregoing release of Liens in any location necessary or appropriate. Effective upon Doughty's delivery of the executed release of Liens on Estate property located in Duval County, Ellis County and/or Johnson County, all Causes of Action or potential Causes of Action against Doughty, in any capacity, shall be released with prejudice.

### 5.11.   Interests in the Debtor – Class 11

(a)    **Impairment and Voting.** Class 11 is impaired under the Plan. Each Holder of an Interest is entitled to vote to accept or reject the Plan.

(b)    **Treatment**. Holders of Interests in Class 11 shall retain their Interests in the Debtor, but such Holders shall receive Pro Rata Distributions from the Creditor Trust only after all Allowed Claims in Classes 1 through 10 are paid in full with interest as provided in Section 12.04 of the Plan. It is not anticipated that there will be any Distributions to Holders of Class 11 Allowed Interests. Further, unless and until all Allowed Claims in Classes 1 through 9 have been paid in full in accordance with the Plan, the voting rights, if any, of Holders of Interests shall be exercised exclusively by the Creditor Trustee.

## <u>ARTICLE VI</u>
## THE CREDITOR TRUST

### 6.01.   Function of Creditor Trust

The Creditor Trust shall exist after the Effective Date, with all the powers of a trust under applicable Texas law.

The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on and after the Effective Date.

After the Effective Date, the Creditor Trust will own the Trust Property and shall have the flexibility to conduct any operations necessary to liquidate the Trust Property and to enhance or preserve the value of the Trust Property consistent with the expeditious and beneficial

liquidation of such property.  However, any business decision that involves more than $50,000 in a capital expenditure will require the approval of the Plan Committee.

### 6.02.    Transfer of Property to Creditor Trust

On the Effective Date, the Debtor will transfer pursuant to 11 U.S.C. § 363(f) all of the Debtor's rights, title and interests in and to all personal property, other than the Retained Assets, to the Creditor Trust; free and clear of all Claims, Liens, charges, other encumbrances, and interests, other than the Claims and Liens of Creditors in Classes 3, 4, and 5 whose treatment is set forth in this Plan; provided, that the Debtor shall retain a cash reserve, in consultation with the Creditor Trustee, as necessary to pay post-petition ordinary course operating expenses, any Allowed Administrative Expenses that are or become due and payable within thirty (30) days after the Effective Date, and expenses associated with the sale of the Retained Assets or the development of the Retained Assets prior to their sale by the Debtor.  Without limiting the foregoing, on the Effective Date, the Debtor shall transfer the DIP Revenue Account to the Creditor Trust, except for any funds in the DIP Revenue Account that the Debtor shall transfer to the M&M Lien Agent pursuant to this Plan, and the Creditor Trustee shall maintain such account as a segregated account.  The Confirmation Order shall authorize the Debtor to make all transfers contemplated by this Section 6.02 of the Plan.

### 6.03.    Transfer and Assertion of Causes of Action, Defenses and Counterclaims

Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtor shall transfer all Causes of Action, claims, counterclaims, rights, defenses, setoffs, recoupments, and actions in law or equity to the Creditor Trust as of the Effective Date.  The Creditor Trust shall retain the exclusive right to prosecute, settle, or compromise any Cause of Action vested in it under the Plan.  To the extent any Cause of Action is not transferable by the Debtor to the Creditor Trust under applicable law, the Debtor shall retain such Cause of Action and the Creditor Trustee shall be entitled to prosecute such Cause of Action for the benefit of the Creditor Trust.  The Creditor Trust shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by the Debtor against or with respect to all Claims asserted against the Debtor or Property of the Estate.  No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Debtor's Schedules or the Disclosure Statement accompanying the Plan unless otherwise ordered by the Bankruptcy Court.  A description of the Causes of Action or potential Causes of Action and the Causes of Action to be transferred to the Creditor Trust is contained in Article VII of the Disclosure Statement.  A supplement to section VII.B to the Disclosure Statement is set forth in Exhibit 14 to the Plan.

### 6.04.   Creditor Trust Action and Governance

(a)   **Management.**  The Creditor Trustee will be Jason R. Searcy.  The Creditor Trustee will serve from and after the Effective Date until his successor is duly elected or appointed.  The Creditor Trustee will be compensated for services provided at a rate of no more than $400.00 per hour for his services.  Professionals retained by the Creditor Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expenses of the Creditor Trust-retained professionals shall be made in the ordinary course of business.  Compensation due to the Creditor Trustee and the Creditor Trust-retained professionals shall be subject to review by the Plan Committee as provided herein.

(b)   **Indemnification.**  The Creditor Trust shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the officers, directors, agents, representatives, attorneys, professionals and employees of the Creditor Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the Creditor Trust or the implementation or administration of the Plan, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Creditor Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

## <u>ARTICLE VII</u>
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 7.01.   Introduction

From and after the Effective Date, the Creditor Trust shall exist and manage the Debtor's Assets that are transferred to the Creditor Trust.  Reichmann shall continue to exist to the extent necessary to consummate the Plan and to develop or sell the Retained Assets.  However, upon the Effective Date, all current officers and directors shall be deemed to have resigned, and the Creditor Trustee shall become the Chief Executive Officer and sole director of the Debtor.  All Professionals of the Debtor and the Creditors Committee shall be discharged upon the Effective Date except to the extent necessary to file and prosecute their final fee applications.  The Bankruptcy Case shall be closed as soon as practicable after the Effective Date upon a motion filed by the Creditor Trustee.

### 7.02.   Plan Funding

The sources of Cash necessary for the payment of Allowed Claims that are to be paid in Cash under the Plan will be Cash on hand as of the Effective Date from the operations of the Debtor and the proceeds from the sale of the Debtor's assets, and any Cash generated or received by the Creditor Trust after the Effective Date from any source, including without limitation the sale of the Retained Assets or the sale of any assets of the Creditor Trust and the recoveries by the Creditor Trustee from the prosecution of all Claims and Causes of Action.  The Creditor Trust will use all available Cash to pay Allowed Claims.

**7.03.   Debtor's Activities Post-Effective Date**

From and after the Effective Date, the Debtor shall take such actions as are necessary or appropriate to transfer all Assets to the Creditor Trust except for the Retained Assets; to cooperate and consult with the Creditor Trustee in the management, liquidation and sale of any property of the Creditor Trust; to sell, or develop and sell, the Retained Assets as expeditiously as possible consistent with the goal of maximizing their value; to pay all post-petition ordinary course operating expenses and any Allowed Administrative Expenses that are or become due and payable within thirty (30) days after the Effective Date; and to transfer the proceeds from the sale of any Assets, including the Retained Assets, to the Creditor Trust.  All such sales shall be free and clear of all Claims, Liens, and Security Interests (subject to any M&M Lien/WIO Settlement and the Debtor's burdens and obligations to other Working Interest Owners pursuant to applicable law or any applicable agreement), and such Claims, Liens, and Security Interests shall attach to the proceeds of any such sale to the same extent, validity, and priority as such Claims, Liens, and Security Interests existed as of the Confirmation Date.  The Plan does not authorize a sale of any property other than an Uncontested Interest.

The Debtor shall sell the Retained Assets as expeditiously as possible, consistent with such development of those assets as the Debtor, in consultation with the Plan Committee, deems appropriate to maximize the value of those assets.  The Debtor shall sell the Retained Assets (a) at one or more auctions pursuant to the bidding and auction procedures approved by the Bankruptcy Court by Orders dated September 24, 2007 (docket #894) and February 15, 2008 (dkt. #1766), and the Plan Committee shall perform the functions, and shall have the rights and duties, of the Creditors Committee as set forth in such Order, or (b) pursuant to any other procedures approved by the Creditor Trustee after consultation with the Plan Committee.

(a)   **Establishment of the Creditor Trust.**   On the Effective Date, the Creditor Trustee shall execute the Creditor Trust Agreement.

(b)   **Assumption of Liabilities.**   Except as otherwise provided herein, the Creditor Trustee (in his capacity as Creditor Trustee and not in his individual capacity) shall assume liability for and the obligations to make the distributions required to be made under the Plan and the Creditor Trust Agreement, but shall not otherwise assume liabilities of the Debtor.

(c)   **Creation of the Creditor Trust.**   Creditors in Classes 1-10 and Interest Holders in Class 11 shall create the Creditors Trust and designate, as stated above, Jason R. Searcy as the initial Creditor Trustee for the purpose of receiving title to all Assets and funds the Debtor transfers to the Creditor Trust, including but not limited to, and except as provided in this Plan, all interests in real and personal property, any and all Claims and Causes of Action, rights, claims, and demands against any third parties, investors, individuals, or insiders, that the Debtor owns or has an interest in or can assert in any fashion, whether pre-petition or post-petition, including but not limited to actions under sections 544 through 550 of the Bankruptcy Code, to recover assets for the Creditor Trust and the benefit of the Creditors, and any other consideration to be received by the Creditors pursuant to the terms of the Plan.

(d)     **Powers and Duties of the Creditor Trustee.**  Pursuant to the Creditor Trust Agreement, the Creditor Trustee shall have the power and authority to perform the following acts, among others:

(i)     Perfect and secure his right, title and interest to any and all Trust Property;

(ii)    Reduce all of the Trust Property to his possession and conserve, protect, collect and liquidate or otherwise convert all Trust Property into Cash;

(iii)   Distribute the net proceeds of Trust Property as specified herein;

(iv)    Release, convey or assign any right, title or interest in or to the Trust Property;

(v)     Pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Trust Property or any part thereof or to preserve the Creditor Trust;

(vi)    Purchase insurance as is necessary for ongoing operations; insure and protect Trust Property, and to protect the Creditor Trust and the Creditor Trustee from liability;

(vii)   Deposit Creditor Trust funds and draw checks and make disbursements thereof;

(viii)  Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Creditor Trustee may deem necessary.  The Creditor Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance on such advice.  The fees and expenses of all such professionals shall be charged as expenses of the Creditor Trust and be shall paid upon approval of the Creditor Trustee;

(ix)    Employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Trust Property;

(x)     Exercise any and all powers granted to the Creditor Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Creditor Trustee hereunder;

(xi)    Take any action required or permitted by this Plan or the Creditor Trust Agreement;

(xii)   Execute obligations, whether negotiable or non-negotiable;

(xiii)  Sue and be sued;

(xiv)  Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor of or against the Creditor Trust;

(xv)  Waive or release rights of any kind;

(xvi)  Appoint, remove and act through agents, managers and employees and confer upon them such power and authority as may be necessary or advisable;

(xvii)  Negotiate, renegotiate or enter into any contracts or agreements binding the Creditor Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Creditor Trustee to be advisable in connection with the performance of his/her duties;

(xviii)  Have instituted and prosecute all Causes of Action on behalf of the Creditor Trust and prosecute or defend all appeals on behalf of the Estate or the Creditor Trust;

(xix)  In general, without in any manner limiting any of the foregoing, deal with the Trust Property or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter;

(xx)  The Creditor Trustee will be a representative of the Debtor's Estate pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute all Causes of Action in the name of the Creditor Trust or as necessary in the name of the Debtor. Additionally, the Creditor Trustee will have power to (1) do all acts contemplated by the Plan to be done by the Creditor Trustee and (2) do all other acts that may be necessary or appropriate for the final liquidation and distribution of the Trust Property;

(xxi)  The Creditor Trustee will review all fee applications filed by Professionals employed during the Bankruptcy Case and shall have authority to object to same;

(xxii)  The Creditor Trustee will review all Claims asserted by the Creditors in Classes 1 through 10 and as set forth herein shall have the right to object to same; and

(xxiii)  The Creditor Trustee shall be responsible for filing a post-confirmation report with the Bankruptcy Court.

(e)     **Proceeds of Litigation.**   Proceeds of any litigation conducted by the Creditor Trustee will be added to the assets of the Creditor Trust.

(f)     **Indemnification and Limitation of Liability.**  The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of his own fraud, willful misconduct, or gross negligence.  The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence.  Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

(g)     **Monitoring, Auditing, and Bonding.**  The Creditor Trustee will not be required to post bond or be audited or monitored except as otherwise expressly provided in the Creditor Trust Agreement.

(h)     **Distributable Cash; Investment.**  The Creditor Trustee shall collect all funds constituting Trust Property and, pending distribution, shall deposit such funds with a federally insured financial institution that has a minimum of $200 million in capital and provides banking services.  The Creditor Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Creditor Trustee may invest all Cash funds received into the Creditor Trust (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the United States Trustee's Office, provided that the Creditor Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills.  The Creditor Trustee shall hold all such funds until they are distributed pursuant to the Plan to Creditors with Allowed Claims.

(i)     **Resignation.**  The Creditor Trustee may resign at any time by giving written notice to the Bankruptcy Court and such resignation shall be effective upon the date provided in such notice.  In the case of the resignation of the Creditor Trustee, a successor Creditor Trustee shall thereafter be appointed by the Plan Committee, whereupon such resigning Creditor Trustee shall convey, transfer and set over to such successor Creditor Trustee by appropriate instrument or instruments all of the Trust Property then unconveyed or otherwise undisposed of and all other assets then in his possession and held under the Plan or the Creditor Trust Agreement.  Without further act, deed or conveyance, a successor Creditor Trustee shall be vested with all the rights, privileges, powers and duties of the Creditor Trustee, except that the successor Creditor Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Creditor Trustee may in like manner resign and another may in like manner be appointed in his place.

(j)     **Budgets; Cash Reports.**  Within 30 days after the Effective Date, Creditor Trustee will prepare and submit to the Plan Committee a proposed budget for the period from the Effective Date through June 30, 2008.  On or before December 1 and June 1 of each year, the Creditor Trustee will prepare and submit to the Plan Committee a proposed six-month budget.  The budget will include proposed projected expenses, proposed projected revenues, and

a proposed operating reserve.  The Creditor Trust, the Creditor Trustee, and the Plan Committee will operate within the approved budgets as they may be modified with the consent of the Plan Committee.  Upon the reasonable request of the Plan Committee, the Creditor Trustee will prepare and submit to the Plan Committee reports on available Cash in the Creditor Trust.

(k)     **Reporting Duties.**  Forty-five (45) days after the end of each calendar quarter of the Creditor Trust and forty-five (45) days after termination of the Creditor Trust, the Creditor Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Creditor Trust at the end of such quarter or upon termination, (ii) any changes in the Trust Property that have not been previously reported, and (iii) any material action taken by the Creditor Trustee in the performance of its duties under the Creditor Trust and under the Plan that has not been previously reported.

(l)     **Trust Implementation.**  On the Effective Date, the Creditor Trust will be established and become effective.  The Debtor shall execute any documents or other instruments as may be necessary to cause title to the Assets to be transferred to the Creditor Trust, however, notwithstanding the execution of such documents, title to the Trust Property will automatically vest in the Creditor Trust on the Effective Date.

(m)     **Termination of Creditor Trust/Final Decree.**  The Creditor Trust shall become effective upon the Effective Date.  Thereupon, the Creditor Trust shall remain and continue in full force and effect until the Trust Property has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid and all remaining income and proceeds of the Trust Property have been distributed in payment of Allowed Claims and, if applicable, Allowed Interests pursuant to the provisions of the Plan.  The Creditor Trust will terminate at the end of five years from the Effective Date; provided, that upon complete liquidation of the Trust Property and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, and upon the conclusion of the prosecution of all Causes of Action by the Creditor Trust and all Claim objections brought by the Creditor Trustee or the Debtor, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust; and provided further, that prior to the end of five years from the Effective Date the Creditor Trustee or any beneficiary of the Creditor Trust may move the Bankruptcy Court to extend the termination date of the Creditor Trust after notice to interested parties and an opportunity for hearing.  On the termination date of the Creditor Trust, the Creditor Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination.  Upon termination and complete satisfaction of its duties under the Creditor Trust Agreement, the Creditor Trustee will be forever discharged and released from all powers, duties, responsibilities and liabilities pursuant to the Creditor Trust other than those attributable to the fraud, gross negligence or willful misconduct of the Creditor Trustee.  The Creditor Trustee shall file a motion with the Bankruptcy Court for entry of a Final Decree pursuant to Fed. R. Bankr. P. 3022 promptly upon administration in full of the Debtor's estate and the Trust Property.

(n)     **Tax Treatment of the Creditor Trust**.  The Creditor Trust to be established for the benefit of Creditors is intended to qualify as a liquidating trust for federal income tax purposes.  All items of income, deduction, credit or loss of the Creditor Trust shall be

allocated for federal, state and local income tax purposes among the Holders of Allowed Claims and Interests.

### 7.04.   Effectuating Documents; Further Transactions

On the Effective Date, the Creditor Trust, the Creditor Trustee, and the employees, agents, attorneys and professionals of the Creditor Trust shall be authorized and directed, without further Order of the Bankruptcy Court, to execute, deliver, file, and record all agreements, instruments and contracts, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions, and consummate, the Plan or to otherwise comply with applicable law.

### 7.05.   Creditors Committee and Plan Committee

(a)   **Termination of Creditors Committee.**  The Creditors Committee will continue in existence until the Effective Date, to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and will perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.  On the Effective Date, the Creditors Committee will be dissolved and its members will be deemed released by the Debtor and its Estate of all their duties, responsibilities and obligations in connection with the Bankruptcy Case, and (ii) from all claims and causes of action relating to or arising directly or indirectly from services performed; provided that this provision does not release members of the Creditors Committee from any Avoidance Action that may be asserted against them.  On the Effective Date, the retention or employment of the Creditors Committee's Professionals and other agents will terminate, except as is necessary to address Fee Applications filed by the Creditors Committee or its Professionals.  Upon the dissolution of the Creditors Committee, no notice to the Creditors Committee that might otherwise be required pursuant to an order of the Bankruptcy Court (e.g., the Procedures Order) shall be required.

(b)   **Establishment of Plan Committee; Powers and Responsibilities.**  On the Effective Date, the Plan Committee will be formed and constituted and will consist of the following five (5) members:  (i) Schlumberger Technology Corporation, Unit Texas Drilling, L.L.C., and Pioneer Drilling Services, Ltd.**;** (ii) Dale Hanst, an Unassigned WIO (provided that if Mr. Hanst votes to reject the Plan, he shall not be a member of the Plan Committee and Mark C. Rutherford, another Unassigned WIO, shall be an initial member of the Plan Committee instead of Mr. Hanst); and (iii) Joe Vick, a non-lawyer business representative of Pathfinder Holdings Trust, an Unassigned WIO, or Mr. Vick's non-lawyer designee.  If a Plan Committee member sells, transfers or assigns any right to or interest in its Claim, said member will be immediately removed from the Plan Committee.  The remaining Plan Committee members will elect a replacement member.  The Plan Committee shall adopt bylaws, which shall provide for the governance of the Plan Committee.  The Plan Committee shall have the following powers and responsibilities:

(i)   The Plan Committee shall monitor the Creditor Trust and the Creditor Trustee in the performance of their obligations under the Plan, including the duties to object to Claims, prosecute Causes of Action, and distribute the funds required under the Plan.

(ii)    The Plan Committee shall be responsible for the termination, selection and replacement of the Creditor Trustee, subject to Bankruptcy Court approval.

(iii)    The Plan Committee shall review and either approve or reject in its discretion the:

    a.  six (6) month budget for the Creditor Trust prepared by the Creditor Trustee, including projected expenses, projected revenues and an operating reserve;

    b.  proposals by the Creditor Trustee to borrow money or grant liens;

    c.  proposals by the Creditor Trustee to sell any Trust Property with a value in excess of $25,000;

    d.  proposals by the Creditor Trustee to modify the Plan;

    e.  proposals by the Creditor Trustee to postpone the scheduled date of a distribution to Holders of Allowed Claims;

    f.  proposals by the Creditor Trustee with respect to initiation, prosecution, and defense of litigation, including but not limited to, claim objections;

    g.  proposals by the Creditor Trustee with respect to disposition and settlement of any claim or litigation; and

    h.  requests for compensation in excess of budgeted amounts by the Creditor Trustee and his/her professionals.

(iv)    The Plan Committee shall have such other powers and responsibilities as set forth in this Plan or the Creditor Trust Agreement.

If the Creditor Trustee disputes the decision of the Plan Committee with respect to any of these issues, the Creditor Trustee shall have the right to seek relief from the Bankruptcy Court. Further, the Creditor Trustee may refuse to take any action at the direction of the Plan Committee that he determines, based upon a reasonable good faith belief, (a) violates the terms of the Plan or the Creditor Trust Agreement, (b) is illegal, or (c) would subject him to a judgment or a finding of gross negligence, willful misconduct, or breach of fiduciary duty.

(c)    **Conflicts of Interest.**  A Plan Committee member will recuse itself from participating in any decision making by the Plan Committee on matters in which there is a conflict of interest, including without limitation, any decision whether to initiate, prosecute, or settle an Avoidance Action or other Cause of Action against such Plan Committee member.

(d)    **Compensation.**  The members of the Plan Committee will serve without compensation for their performance of services as members of the Plan Committee, except that

they will be entitled to reimbursement of reasonable expenses by Creditor Trust.

(e) **Retention of Professionals.**  The Plan Committee will have the right to retain the services of attorneys, accountants and other agents that, in the discretion of the Plan Committee, are necessary to assist the Plan Committee in performance of its duties.  The fees and expenses of such professionals will be paid by the Creditor Trust upon the monthly submission of bills to the Creditor Trust and the Plan Committee.  The payment of the fees and expenses of the Plan Committee's retained professionals will be made in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court.

(f) **Indemnification and Limitation of Liability.**  Neither the Plan Committee, nor any of its members, designees, or professionals, nor any duly designated agent or representative of the Plan Committee, or their respective employees, will be liable for the act or omission of any other member, designee, agent, or representative of the Plan Committee, nor will any member be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Plan Committee, other than acts or omissions resulting from such member's fraud, willful misconduct or gross negligence.  The Plan Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with counsel, accountants and its agents, and will not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Plan Committee will be under no obligation to consult with counsel, accountants or its agents, and its determination to not do so will not result in the imposition of liability on the Plan Committee, or its members and/or designees, unless such determination is based on willful misconduct or gross negligence.  The Creditor Trust shall indemnify and hold harmless the Plan Committee and its members, designees, and professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than as a result of their fraud, willful misconduct or gross negligence, with respect to the Creditor Trust or the implementation or administration of the Plan.

(g) **Dissolution.**  When the Creditor Trust has made all payments provided for in the Plan to the Holders of Allowed Claims and, if applicable, to Holders of Allowed Interests, and all other obligations of the Plan Committee under the Plan have been fulfilled, the duties, powers and responsibilities of the Plan Committee shall terminate forthwith and the Plan Committee shall dissolve.

### 7.06.  Dissolution of the Debtor

As soon as the Debtor has performed all of its obligations under the Plan and the Creditor Trustee deems advisable, the Debtor may be dissolved by the Debtor or the Creditor Trustee.  As soon as the Creditor Trustee may determine that no property will be distributed to the Holders of Allowed Interests under the Plan, the Creditor Trustee may cause all of the issued outstanding Interests in the Debtor to be canceled and rendered void.

# ARTICLE VIII
## TREATMENT OF M&M LIEN CLAIMS

### 8.01.   General Treatment of Allowed M&M Lien Claims

Unless the Holder of an Allowed M&M Lien Claim has been paid prior to the Effective Date, agrees to a different treatment, or is the subject of an order entered with respect to the treatment of such Claim prior to the Effective Date, each Allowed M&M Lien Claim shall be treated as provided in this Article VIII of the Plan.  Pursuant to Sections 8.08-8.11 of the Plan, payments to Holders of Allowed M&M Lien Claims will be funded by potentially three (3) sources:  (i) the Debtor's Uncontested Interests, (ii) the Unassigned Working Interests of Settling Unassigned WIOs, and (iii) the Late-Assigned Working Interests of Settling Late-Assigned WIOs.  In addition, the M&M Lien Claimants' rights with respect to Unassigned Working Interests of Non-Settling Unassigned WIOs and Late-Assigned Working Interests of Non-Settling Late-Assigned WIOs are not released or otherwise impaired by the Plan.  Each Holder of an Allowed M&M Lien Claim within a subclass of Class 3 shall receive a Pro Rata share of all Distributions to such subclass.  All provisions of Article VIII are subject to the terms of the M&M Lien/WIO Settlements.

As to any Disputed M&M Lien Claim, an amount of Cash equal to the Face Amount of the Claim (plus all amounts claimed under any timely Notice of Claim Under 506(b), see Section 13.05 of the Plan) will be reserved in the Class 3 Disputed Lien Reserve, as described in Section 8.03(b) of the Plan, until such time as the Allowed Amount of the Claim is determined.  The amount of Cash to be reserved in the Class 3 Disputed Lien Reserve is subject to adjustment on and after the Confirmation Date to account for actual interest, fees and costs due, to the extent allowable under section 506(b) of the Bankruptcy Code.

### 8.02.   M&M Lien Agent

(a)   **Ratification of M&M Lien Agent Agreement and M&M Lien/WIO Settlements.**  On the Effective Date, each Holder of an Allowed Class 3 Claim will be deemed to have ratified and become bound by the terms of the M&M Lien Agent Agreement and each settling M&M Lien Creditor ratification provided for in each applicable M&M Lien/WIO Settlement.  The M&M Lien Agent is empowered to execute the M&M Lien Agent Agreement on behalf of each Holder of an Allowed Class 3 Claim.

(b)   **Selection of Initial M&M Lien Agent.**  The initial M&M Lien Agent shall be Charles Gebhart.  Any successor shall be selected in accordance with the terms of the M&M Lien Agent Agreement.

(c)   **Authority.**  The M&M Lien Agent shall have the authority granted pursuant to the Plan, the Confirmation Order and the M&M Lien Agent Agreement.

(d)   **Compensation.**  Fees and expenses (including legal fees) incurred by the M&M Lien Agent shall be allocated to the specific subclass and paid out of funds received by the M&M Lien Agent that are attributable to the subclass.

**8.03.   Accounts and Reserve**

(a)   **Establishment of Accounts**.  As soon as practical after receipt of funds attributable to a Class 3 subclass, the M&M Lien Agent shall establish an account or (in his sole discretion) accounts at a federally insured bank for such Class 3 subclass.  The M&M Lien Agent shall make deposits into the applicable Class 3 subclass accounts pursuant to the terms of this Plan.

(b)   **Disputed M&M Lien Reserve.**  Prior to making any Distribution, the M&M Lien Agent shall establish the Class 3 Disputed Lien Reserve.  Upon delivery by the M&M Lien Agent of Distributions to Holders of Allowed Claims in a Class 3 subclass, the M&M Lien Agent shall deposit the applicable Class 3 Disputed Lien Deposit into the Class 3 Disputed Lien Reserve.  Within fifteen (15) Business Days after a Class 3 Disputed M&M Lien Claim becomes an Allowed Class 3 Claim, the M&M Lien Agent shall distribute out of the Class 3 Disputed Lien Reserve the amount to which the Holder of such Claim is entitled under this Plan.  Upon disallowance, in whole or in part, of an M&M Lien Claim, the amount on deposit attributable to the Disallowed M&M Lien Claim amount shall be available for distribution to Holders of Allowed M&M Lien Claims within the applicable subclass, unless such Holders have been paid in full, in which event such amount shall be transferred to the Creditor Trust for distribution to the Holders of Allowed Claims in junior classes, including but not limited to Class 5 and Class 8, according to their respective interests.

**8.04.   Distribution to Holders of Allowed Class 3 Claims**

After funding the Class 3 Disputed Lien Reserve as required in this Plan, Cash on deposit in the Class 3 subclass accounts (net of current and projected expenses of the M&M Lien Agent) shall be distributed Pro Rata to Holders of the applicable Allowed Class 3 subclass Claims by the M&M Lien Agent.

**8.05.   Unsecured or Undersecured M&M Lien Claims**

To the extent an M&M Lien Claim is not a Secured M&M Lien Claim, it shall be treated as a Class 8 General Unsecured Claim or, as applicable, a Class 7 Convenience Claim.

**8.06.   Allowed Amount and Perfection of M&M Lien Claims**

(a)   **Allowance of M&M Lien Claims.**  Each M&M Lien Claim shall be deemed to be Allowed in the amount set forth on the M&M Lien Schedule and shall be deemed to be properly perfected as to an interest of the Debtor in the relevant M&M Lien Subclass Collateral as of the Effective Date, subject to the rights of a Non-Settling Unassigned WIO under Section 9.04 of the Plan, unless such M&M Lien Claim is listed as disputed on the M&M Lien Schedule.   The foregoing provision shall be binding only on the Debtor, the Creditors Committee, the Creditor Trust, and the Plan Committee.  Pursuant to Section 8.06(b) below, all other parties in interest, including an Unassigned WIO, are entitled to contest the validity, amount and perfection of any M&M Lien Claim, except as otherwise provided in any M&M Lien/WIO Settlement.

If the Holder of an M&M Lien Claim is not listed on the M&M Lien Schedule, such Holder must file with the Bankruptcy Court, within twenty (20) days after the Effective Date, all documents supporting its M&M Lien Claim, including without limitation, the amount of the claim, a description of the M&M Subclass Collateral or other Estate property allegedly securing such Claim, and evidence of the perfection of any related Lien.

(b)     **Objections to M&M Lien Claims.**  Upon written request by a party in interest,[2] the Debtor will provide, within seven (7) days after its receipt of such request, copies of all documents that the Debtor relied on to prepare the M&M Lien Schedule.  The Debtor will provide such information only in a searchable electronic format, at the requesting party's expense.  The Creditor Trustee may file an objection to the allowance of any M&M Lien Claim that is listed as disputed on the M&M Lien Schedule or that is filed pursuant to Section 8.06(a) of the Plan.  Any other party in interest, including an Unassigned WIO, may file an objection to any M&M Lien Claim listed on the M&M Lien Schedule or filed pursuant to Section 8.06(a) of the Plan.  Any such objection must be filed with the Bankruptcy Court within forty-five (45) days after the Effective Date.  Any M&M Lien Claim that is listed as disputed on the M&M Lien Schedule, or as to which the Holder thereof has filed the documentation required by Section 8.06(a) of the Plan, will be deemed valid, but only as to the Debtor and any ownership interest of the Debtor in the relevant M&M Lien Subclass Collateral as of the Effective Date (subject to the rights of a Non-Settling Unassigned WIO under Section 9.04 of the Plan), if an objection is not timely filed.  The Bankruptcy Court shall determine any such objections pursuant to Bankruptcy Rule 9014.

### 8.07.    Valuation of Secured M&M Lien Claims

For the purpose of determining the extent to which an M&M Lien Claim is a Secured M&M Lien Claim solely as to Reichmann's Uncontested Interest within Class 3, the value of Reichmann's Uncontested Interest that is encumbered by M&M Lien Claims in a Class 3 subclass shall be conclusively established in the manner set forth in this Section.  The value of Reichmann's Uncontested Interest in the M&M Lien Subclass Collateral sold pursuant to a sale approved by a Bankruptcy Court order entered on or before the Effective Date shall be the value of all sales proceeds (including both Cash and non-Cash consideration) attributable to Reichmann's Uncontested Interest.  The value of Reichmann's Uncontested Interest in M&M Lien Subclass Collateral sold other than pursuant to a sale approved by a Bankruptcy Court order entered on or before the Effective Date shall be the value of all sales proceeds (including both Cash and non-Cash consideration) and the Net Production Proceeds with respect to such M&M Lien Subclass Collateral accumulating between the Effective Date and the closing of the sale.  The Bankruptcy Court shall determine, pursuant to Bankruptcy Rule 9014, any disputes concerning the value of Reichmann's Uncontested Interest in any M&M Lien Subclass Collateral.  Further, if any Uncontested Interest in M&M Lien Subclass Collateral is assigned to the M&M Lien Agent as provided in section 8.09(c) of the Plan, the Bankruptcy Court will promptly determine, upon motion of any party in interest, the value of such M&M Lien Subclass Collateral pursuant to Bankruptcy Rule 9014.

---

[2] Any such request must be submitted in writing by mail, hand delivery, fax, or electronic mail to:  Kathy Gradick, Neligan Foley LLP, 1700 Pacific Avenue, #2600, Dallas, TX 75201, Fax No. 214-840-5301, email: kgradick@neliganlaw.com.

**8.08.   Treatment of M&M Lien Subclasses as to Which the Debtor's Uncontested Interest Constituting the M&M Lien Subclass Collateral is Sold Pursuant to a Sale Approved by the Bankruptcy Court Order Entered on or Before the Effective Date**

This section is applicable to any Class 3 subclass as to which the sale of an Uncontested Interest that constitutes M&M Lien Subclass Collateral for such subclass has been approved by an order of the Bankruptcy Court entered on or before the Effective Date and such sale is actually consummated pursuant to the terms of such order.  If such sale is not consummated, then Section 8.09 shall apply.  By voting in favor of confirmation of this Plan, an M&M Lien Claimant shall not be deemed to have waived any objection to the terms of any proposed sale of Reichmann's Uncontested Interest.

(a)     **Suspense Funds.**  Within twenty (20) Business Days after the later of (i) the Effective Date or (ii) the closing of the sale of Reichmann's Uncontested Interest, all Debtor's Suspense Funds received through such date up to the Face Amount of the Allowed Secured M&M Lien Claims within the subclass shall be delivered to the M&M Lien Agent.  All Debtor's Suspense Funds received after such date up to the Face Amount of the Allowed Secured M&M Lien Claims within the subclass shall be delivered to the M&M Lien Agent within twenty (20) Business Days after receipt by the Creditor Trustee.

(b)     **Cash Consideration.**  One hundred percent (100%) of all Cash proceeds from the sale of Reichmann's Uncontested Interest encumbered by the liens of a M&M Lien Claim subclass up to the Face Amount of the Allowed Secured M&M Lien Claims within the subclass shall be transferred to the M&M Lien Agent for the benefit of said M&M Lien Claim subclass at the closing of such sale.  Any Cash proceeds received by the Debtor after the closing shall be delivered to the M&M Lien Agent within ten (10) Business Days of the Debtor's receipt of such Cash proceeds.

(c)     **Non-Cash Consideration.**  In the event that the sum of Debtor's Suspense Funds and Cash consideration transferred to the M&M Lien Agent pursuant to Sections 8.08(a) and 8.08(b) above is less than the total amount of Allowed Secured M&M Lien Claims within a subclass, then the Creditor Trustee shall distribute to the M&M Lien Agent for the benefit of and distribution to the Holders of Allowed Secured M&M Lien Claims in the relevant subclass, on a Pro Rata basis, all Cash received by the Creditor Trust on account of such non-Cash consideration as promptly as practicable after such receipt, taking into account the amount of such Cash receipts and the then unpaid portion of any Allowed Secured M&M Lien Claims within the relevant subclass.  Any Liens against the relevant Uncontested Interest shall attach to the non-Cash consideration from the sale thereof, and such Liens shall be deemed fully released, satisfied and extinguished upon the earlier of the payment in full of the Allowed Secured M&M Lien Claims in the relevant subclass or the exhaustion of the Cash value of the non-Cash consideration.  If the Cash proceeds from the non-Cash consideration are sufficient to pay all Allowed Secured M&M Lien Claims in the relevant subclass in full, any remaining Cash proceeds from such non-Cash consideration shall become property of the Creditor Trust, free and clear of all Liens, claims, or interests of any Secured M&M Lien Claimant, and the Creditor Trustee may distribute such remaining proceeds to the Holders of Allowed Claims in junior classes, including but not limited to Class 5 and Class 8, according to their respective interests.

(d)      **Release.**   Upon payment in full of all Allowed Secured M&M Lien Claims within a Class 3 subclass, the M&M Lien Agent is empowered and required to execute and file instruments releasing all M&M Liens within such Class 3 subclass solely as to the Debtor.  The M&M Lien Agent shall file such instruments within twenty (20) Business Days after full payment of all Allowed Secured M&M Lien Claims and funding of reserves, if any, for Disputed M&M Lien Claims within the relevant Class 3 subclass.

**8.09.    Treatment of M&M Lien Subclasses as to Which the Debtor's Uncontested Interest Constituting the M&M Lien Subclass Collateral is Not Sold Pursuant to a Sale Approved by the Bankruptcy Court Order Entered on or Before the Effective Date**

This Section is applicable to any Class 3 subclass as to which the sale of an Uncontested Interest that constitutes M&M Lien Subclass Collateral for such subclass (a) has not been approved by an order of the Bankruptcy Court entered on or before the Effective Date or (b) has been approved by an order of the Bankruptcy Court entered on or before the Effective Date but is not actually consummated pursuant to the terms of such order.

(a)      **Liens.**   All M&M Liens securing Allowed Secured M&M Lien Claims shall remain in force and effect as to any Uncontested Interest that is subject to section 8.09 until such M&M Liens are released as provided in this Plan.   All applicable statutes of limitations with respect to the M&M Lien Claims and initiation of enforcement actions shall be tolled for so long as Reichmann continues to own an interest in the applicable M&M Lien Subclass Collateral.

(b)      **Net Production Proceeds Prior to Sale.**   Ninety percent (90%) of the Net Production Proceeds generated by an Uncontested Interest that is subject to section 8.09 shall be paid to the M&M Lien Agent for the benefit of the Holders of Allowed Secured M&M Lien Claims in the applicable Class 3 subclass until the closing on a sale of such Uncontested Interest or until the Debtor assigns such Uncontested Interest to the M&M Lien Agent pursuant to section 8.09(c) or 8.09(g).

(c)      **Marketing.**   Reichmann shall have the lesser of (i) thirty (30) days prior to expiration of a lease comprising M&M Lien Subclass Collateral, and (ii) 180 days following the Effective Date to market any Uncontested Interest that is subject to section 8.09 ("Marketing Period").   At the end of the Marketing Period or any extension thereof, the M&M Lien Agent, acting in accordance with the directive of the Requisite Majority of M&M Lien Claimants within the applicable Class 3 subclass, shall notify Reichmann and the Creditor Trustee that (i) the Marketing Period or any extension thereof has been extended for an additional period of time, or (ii) the Holders of Allowed Secured M&M Lien Claims in the relevant Class 3 subclass have elected, by the Requisite Majority, to take an assignment of Reichmann's Uncontested Interest in the applicable M&M Lien Subclass Collateral in satisfaction of their respective Allowed Secured M&M Lien Claims within the subclass solely as to the Debtor.   The Debtor shall deliver an assignment of the Uncontested Interest in the applicable M&M Lien Subclass Collateral to the M&M Lien Agent within ten (10) Business Days of notice of election.

(d)      **Proposed Sale.**   Reichmann shall notify the M&M Lien Agent of the terms of any proposed sale of the M&M Lien Subclass Collateral.   The notice shall be in writing

and delivered no later than twenty-five (25) days prior to the anticipated closing date on the proposed sale.  Reichmann or the Creditor Trustee shall provide the M&M Lien Agent with a copy of the proposed purchase and sale agreement within a reasonable time before the closing date for any such sale.  Reichmann or the Creditor Trustee shall provide the M&M Lien Agent with all available additional requested information concerning the proposed sale.  Any purchase and sale agreement with respect to M&M Lien Subclass Collateral shall expressly provide that the sale is subject to approval of the Requisite Majority of M&M Lien Claimants within the applicable subclass unless the Allowed M&M Lien Claims within the subclass will be paid in full in Cash at the closing on the sale.

(e)     **Release.**  The M&M Lien Agent is empowered and required to execute instruments releasing all M&M Liens within a Class 3 subclass solely as to the Debtor at any closing of a sale of any Uncontested Interest subject to section 8.09 that has been approved by the Requisite Majority of M&M Lien Claimants within the subclass or that pays all Allowed Secured M&M Lien Claims in such Class 3 subclass in Cash in full.  The M&M Lien Agent is further empowered and required to file such instruments within twenty (20) days after such closing and the funding of reserves, if any, for Disputed M&M Lien Claims within the relevant subclass.

(f)     **Application of Sale Proceeds.**  One hundred percent (100%) of all Cash proceeds from the sale of Reichmann's Uncontested Interest encumbered by the liens within a Class 3 subclass up to the total Face Amount of all Secured M&M Lien Claims within the subclass shall be paid to the M&M Lien Agent for the benefit of the Holders of such Secured M&M Lien Claims.  In the event that the sum of the Net Production Proceeds and Cash proceeds transferred to the M&M Lien Agent pursuant to Sections 8.09(b) and 8.09(f) is less than the total amount of Allowed Secured M&M Lien Claims within a subclass, then the Creditor Trustee shall distribute to the M&M Lien Agent for the benefit of and distribution to the Holders of Allowed Secured M&M Lien Claims in the relevant subclass, on a Pro Rata basis, all Cash received by the Creditor Trust on account of any non-Cash consideration from the sale of the relevant Uncontested Interest as promptly as practicable after such receipt, taking into account the amount of such Cash receipts and the then unpaid portion of any Allowed Secured M&M Lien Claims within the relevant subclass.  Any Liens against the relevant Uncontested Interest shall attach to the non-Cash consideration from the sale thereof, and such Liens shall be deemed fully released, satisfied and extinguished upon the earlier of the payment in full of the Allowed Secured M&M Lien Claims in the relevant subclass or the exhaustion of the Cash value of the non-Cash consideration.  If the total amount of Cash delivered to the M&M Lien Agent pursuant to Sections 8.09(b) and 8.09(f) is sufficient to pay all Allowed Secured M&M Lien Claims in the relevant subclass in full, the M&M Lien Agent shall, within ten (10) Business Days after the total Allowed amount of such claims has been determined, deliver any remaining Cash to the Creditor Trust.  Such remaining Cash shall be property of the Creditor Trust, free and clear of all Liens, claims, or interests of any Secured M&M Lien Claimant, and the Creditor Trustee may distribute such remaining proceeds to the Holders of Allowed Claims in junior classes, including but not limited to Class 5 and Class 8, according to their respective interests.

(g)     **Allegedly Valueless Liens.**  No later than ten (10) days prior to the Confirmation Hearing, the Debtor shall file a list of M&M Lien Subclasses as to which it believes the underlying collateral is valueless.  Effective thirty (30) days following the Effective

Date, all M&M Liens and Secured M&M Lien Claims within each such Class 3 subclass shall be deemed released and fully satisfied as to the Debtor unless the Holders of the Requisite Majority of Allowed Secured M&M Lien Claims within the subclass deliver written notice to the Debtor and the Creditor Trustee that they have elected to take an assignment of the Uncontested Interest which is the M&M Lien Subclass Collateral in satisfaction of their Allowed Secured M&M Lien Claims within such subclass.  In the event of such election the Debtor shall within ten (10) Business Days of receipt of such notice deliver an assignment of the Uncontested Interest in the relevant M&M Lien Subclass Collateral to the M&M Lien Agent for the benefit of all Holders of Allowed Secured M&M Lien Claims within such subclass.  Upon the Debtor's delivery of such assignment to the M&M Lien Agent, all M&M Liens within each relevant Class 3 subclass shall be deemed released as to the Debtor.  Within ten (10) Business Days after the deemed release of any M&M Liens as to the Debtor pursuant to this Section 8.09(g), the M&M Lien Agent shall be empowered to and shall execute and file instruments releasing all M&M Liens within the relevant such Class 3 subclass.

(h)     **Unsold Uncontested Interests Encumbered by M&M Lien Subclass Collateral.**  If at any time after the Effective Date (including at any time within the Marketing Period or any extension thereof described in section 8.09(c)) the Debtor determines that it is unable to sell any Uncontested Interest that is encumbered by any M&M Lien Subclass Collateral and that it intends to abandon such Uncontested Interest, the Debtor shall deliver to the M&M Lien Agent and all M&M Lien Creditors within the applicable subclass written notice of its intent to abandon ("Abandonment Notice").  Within thirty (30) days following delivery of the Abandonment Notice, if the Requisite Majority of the Holders of Allowed Secured M&M Lien Claims in the relevant Class 3 subclass have not notified Reichmann of their election to take an assignment of the Uncontested Interest that is encumbered by the M&M Lien Subclass Collateral, then (i) such Uncontested Interest shall remain property of the Debtor for further marketing, in the Debtor's sole discretion, until such Uncontested Interest expires or terminates or until the Debtor or the Creditor Trust abandons such Uncontested Interest, (ii) the M&M Liens in such subclass shall be deemed released, and (iii) the M&M Lien Agent is authorized and required to execute and file a release of the M&M Liens within such Class 3 subclass on behalf of the M&M Lien subclass creditors.  In the event that within the sixty (60) day period following the Abandonment Notice the Requisite Majority of the Holders of Allowed Secured M&M Lien Claims in the relevant Class 3 subclass elect for the M&M Lien Agent to receive an assignment of such Uncontested Interest on behalf of the subclass, then the Debtor shall assign such Uncontested Interest to the M&M Lien Agent for the benefit of the Holders of Allowed Secured M&M Lien Claims in the relevant Class 3 subclass in full satisfaction of such Allowed Secured M&M Lien Claims.  Within ten (10) Business Days after the receipt of the related assignment instruments(s) from the Debtor, the M&M Lien Agent is empowered to and shall execute and file instruments releasing all M&M Liens within such Class 3 subclass.

(i)     **Lease Expiration Schedule.**  The Debtor shall file a schedule setting forth the lease expiration dates for all unsold Uncontested Interests no later than ten (10) days prior to the Confirmation Hearing.

(j)     **Authority of M&M Lien Agent to Sell.**  With respect to any unsold Uncontested Interests assigned to the M&M Lien Agent pursuant to Section 8.09(g) or 8.09(h), the M&M Lien Agent will have authority to sell said interests at the direction of the Requisite

Majority of M&M Lien Claimants within the applicable Class 3 subclass free and clear of all M&M Liens within the subclass.

**8.10.   Treatment of M&M Lien Claims Encumbering Settling Unassigned WIOs Electing the Section 9.03(a)(1) Assignment Settlement Interest Option and/or Settling Late-Assigned WIOs**

This Section is applicable to Class 3 subclasses as to which the M&M Lien Claims encumber the Unassigned Working Interests of Settling Unassigned WIO's electing to receive an Assigned Settlement Interest under Section 9.03(a)(1) of the Plan and/or the Late-Assigned Working Interests of Settling Late-Assigned WIOs.   This Section establishes a means to effectuate the settlement of M&M Lien Claims against such Unassigned Working Interests and Late-Assigned Working Interests.   The rights and remedies of M&M Lien Claimants pursuant to this Section are independent of and in addition to any recovery realized pursuant to Section 8.08 and Section 8.09 of the Plan.

(a)   **Obligation Amounts.**   The amount to be paid by Unassigned WIOs and Late-Assigned WIOs shall be the Formula Amount as calculated in Section 9.03(i) and Section 10.02, respectively (applied to the aggregate amount of Allowed M&M Lien Claims within the relevant Class 3 subclass).   The timing, manner, and sources of the payment of the Formula Amount shall be as set forth in this Section 8.10 of the Plan.

(b)   **Suspense Funds.**   Within twenty (20) Business Days after the Effective Date, all WIO Suspense Funds received as of the Effective Date and attributable to Settling Unassigned WIOs who elect to receive an Assigned Settlement Interest under Section 9.03(a)(i) and Settling Late-Assigned WIOs, up to but not exceeding the applicable Formula Amount payable by such Settling Unassigned WIOs and Settling Late-Assigned WIOs, shall be delivered to the M&M Lien Agent for the benefit of the Holders of Allowed M&M Lien Claims in the relevant Class 3 subclass.   All WIO Suspense Funds received after the Effective Date up to the Face Amount of the Allowed M&M Lien Claims within the subclass shall be delivered to the M&M Lien Agent within twenty (20) Business Days after receipt by the Creditor Trustee. Any WIO Suspense Funds in excess of the Formula Amount shall be paid to the relevant Settling Unassigned WIO and/or Settling Late-Assigned WIO, as applicable, within thirty (30) days after the Formula Amount has been fully paid.

(c)   **Settling Unassigned WIOs Production Payment Assignments.**   In the event the WIO Suspense Funds attributable to a Settling Unassigned WIO who elects to receive the Assigned Settlement Interest under Section 9.03(a)(1) are insufficient to pay its Formula Amount, the Debtor shall execute and deliver to the M&M Lien Agent within ten (10) Business Days after the Effective Date one or more Production Payment Assignments, as applicable, on behalf of such Settling Unassigned WIO.   The assignment of the Assigned Settlement Interest to the Settling Unassigned WIO pursuant to Section 9.03(a)(l) shall be made expressly subject to such Production Payment Assignment.   The Production Payment Assignment(s) required by this Section with respect to a Settling Unassigned WIO shall terminate and be released upon the payment in full of the Formula Amount for the applicable Allowed M&M Lien Claims.

(d)     **Settling Late-Assigned WIOs Production Payment Assignments.**  In the event the WIO Suspense Funds attributable to a Settling Late-Assigned WIO are insufficient to pay its Formula Amount, within ten (10) Business Days after the Effective Date, the Settling Late-Assigned WIO shall execute and deliver to the M&M Lien Agent separate Production Payment Assignments with respect to each Late-Assigned Working Interest encumbered by a subclass of M&M Lien Claims.  The Production Payment Assignment required by this Section with respect to a Settling Late-Assigned WIO shall terminate and be released upon the payment in full of the Formula Amount for the applicable Allowed M&M Lien Claims.

### 8.11.   Treatment of M&M Lien Claims Encumbering Settling Unassigned WIOs Electing the Section 9.03(a)(2) WIO Sales Proceeds Option

This Section is applicable to Class 3 subclasses as to which the M&M Lien Claims encumber the Unassigned Working Interests of Settling Unassigned WIOs electing to receive WIO Sales Proceeds under Section 9.03(a)(2) of the Plan.  This Section establishes a means to effectuate the settlement of M&M Lien Claims against such Unassigned Working Interests.  The rights and remedies of M&M Lien Claimants pursuant to this Section are independent of and in addition to any recovery realized pursuant to Section 8.08 and Section 8.09 of the Plan.

(a)     **Obligation Amount.**  The amount to be paid by Settling Unassigned WIOs shall be the Formula Amount as calculated in Section 9.03(i) of the Plan (applied to the aggregate amount of Allowed M&M Lien Claims within the relevant Class 3 subclass).

(b)     **Suspense Funds.**  Within twenty (20) Business Days after the Effective Date, all WIO Suspense Funds received as of the Effective Date and attributable to Settling Unassigned WIOs, up to but not exceeding the applicable Formula Amount of such Settling Unassigned WIOs, shall be delivered to the M&M Lien Agent for the benefit of the Holders of Allowed M&M Lien Claims in the relevant Class 3 subclass.  All WIO Suspense Funds received after the Effective Date up to the Face Amount of the Allowed M&M Lien Claims within the subclass shall be delivered to the M&M Lien Agent within twenty (20) Business Days after receipt by the Creditor Trustee.  Any WIO Suspense Funds in excess of the Formula Amount shall be paid to the relevant Settling Unassigned WIO within thirty (30) days after the Formula Amount has been fully paid.

(c)     **Sale of Settling Unassigned Working Interest**

(i)     The Unassigned Working Interest of Settling Unassigned WIOs electing to receive WIO Sales Proceeds under Section 9.03(a)(2) of the Plan shall be sold in accordance with Article IX of the Plan.

(ii)     In the event that a Settling Unassigned Working Interest is sold pursuant to a sale approved by an order of the Bankruptcy Court entered on before the Effective Date, then the provisions of Section 8.08 shall be applicable to such interests.  In the event that a Settling Unassigned Working Interest is sold other than pursuant to a sale approved by an order of the Bankruptcy Court entered on or before the Effective Date, then the provisions of Section 8.09 shall be applicable to such interests.

(d) **WIO Sales Proceeds.** In the event that the WIO Suspense Funds attributable to a Settling Unassigned WIO are insufficient to pay its Formula Amount under Section 9.03(i), the Debtor shall transfer to the M&M Lien Agent the WIOs Sales Proceeds (as defined in Section 9.03(a)(2)) necessary to satisfy the Formula Amount for such Settling Unassigned WIO. The Debtor shall transfer to the M&M Lien Agent the WIO Sales Proceeds (as defined in Section 9.03(a)(2)) attributable to the relevant M&M Lien Subclass Collateral at the closing of the sale, provided that the M&M Lien Agent shall not distribute any such WIO Sales Proceeds to the Holder of an M&M Lien Claim until such claim becomes an Allowed M&M Lien Claim. If the Formula Amount is in excess of the remaining balance owed to the Holders of Allowed M&M Lien Claims, that portion of the Formula Amount which is in excess of the remaining balance shall be reassigned to the Creditor Trust subject to Section 8.14 of the Plan upon satisfaction of all Allowed M&M Lien Claims and the funding of reserves, if any, for Disputed M&M Lien Claims within the relevant subclass.

### 8.12. Application of Distributions Pursuant to an M&M Lien/WIO Settlement

The total amount of Allowed M&M Lien Claims within a Class 3 subclass shall be reduced by the dollar amount of funds disbursed by the M&M Lien Agent as of the Effective Date to M&M Lien Claimants who are bound by a M&M Lien/WIO Settlement.

### 8.13. Post-Effective Date Interest

All Allowed Secured M&M Lien Claims shall bear simple interest at the rate of six percent (6%) per annum from the Effective Date until fully paid. However, if the Debtor obtains any third-party financing to develop any Retained Asset that constitutes M&M Lien Subclass Collateral, the Allowed Secured M&M Lien Claims in the relevant Class 3 subclass shall bear simple interest at the rate of fifteen percent (15%) per annum from the Effective Date until fully paid. It is understood that this provision is not relevant to the calculation of the Formula Amount.

### 8.14. Assignment of Rights to Payments from Unassigned WIOs and Late-Assigned WIOs

Subject to the terms of any applicable M&M Lien/WIO Settlement, at such time as the M&M Lien Agent has received funds with respect to a Class 3 subclass that are sufficient to pay (i) all Allowed M&M Lien Claims within the subclass, plus (ii) interest thereon at the rate of six percent (6%) per annum from the Petition Date through the Effective Date, plus (iii) the M&M Lien Agent's fees and expenses allocated to said subclass, the M&M Lien Agent shall assign to the Creditor Trust all residual rights, including under any Production Payment Assignments, of said subclass under Sections 8.10 and 8.11 and any applicable M&M Lien/WIO Settlements.

### 8.15. Binding Effect of Plan Settlements and M&M Lien/WIO Settlements

(a) **Settlements Effectuated by the Plan.** All Holders of Allowed M&M Lien Claims are deemed to have ratified and become bound by the terms of all settlements with Settling WIOs effectuated by this Plan. Upon the M&M Lien Agent's receipt of the Formula Amount with respect to a Settling WIO, the Allowed M&M Lien Claims within the applicable Class 3 subclass shall be released solely as they relate to said Settling WIO's interest in the

subject M&M Lien Subclass Collateral.  The M&M Lien Agent is empowered and required to execute and file instruments releasing all such Allowed M&M Liens within the applicable Class 3 subclass solely as to the Settling WIO's interest in the subject M&M Lien Subclass Collateral as to which the Formula Amount has been paid in full.  The M&M Lien Agent shall not release any M&M Lien Claim pursuant to the provisions of the Plan that is not an Allowed M&M Lien Claim.  The M&M Lien Agent shall file lien release instruments within twenty (20) days after the M&M Lien Agent's receipt of the full amount of the relevant Formula Amount.

(b)     **Amendment of M&M Lien/WIO Settlements.**  All Holders of Allowed M&M Lien Claims shall be deemed to have elected to become a party to any applicable M&M Lien/WIO Settlements, and all rights of a Holder of an Allowed M&M Lien Claim to exercise any rights regarding its alleged lien claims shall be governed exclusively by the Plan or, if applicable, an M&M Lien/WIO Settlement with respect to the Debtor and any relevant Unassigned WIO.  With respect to all other parties, including any Non-Settling WIO, the Holder of an Allowed M&M Lien Claim shall be entitled to exercise all rights it may have under applicable law.  The M&M Lien/WIO Settlements are hereby amended to include all Holders of Allowed M&M Lien Claims within the applicable Class 3 subclass as parties.  The Plan does not otherwise alter any parties' rights and interests under any M&M Lien/WIO Settlement.

(c)     **No Liability.**  The M&M Lien Agent shall have no liability to any M&M Lien Creditor as a result of the M&M Lien Agent's execution or recordation of a release in accordance with this Plan.

(d)     **Ratification and Distribution Reserve.**  The M&M Lien Agent may elect to hold Distributions to a Holder of an Allowed M&M Lien Claim in a reserve account until such time as the relevant Holder delivers to the M&M Lien Agent an executed ratification and limited power of attorney (i) as to any applicable M&M Lien/WIO Settlement, in the form provided in the M&M Lien/WIO Settlement, and (ii) as to any settlement with a Settling WIO effectuated under this Plan as to any Class 3 subclass for which there is not an M&M Lien/WIO Settlement, in a form filed with the Bankruptcy Court prior to the Confirmation Date.

### 8.16.  Claims Against Non-Settling Unassigned WIOs and Non-Settling Late-Assigned WIOs

The M&M Lien Agent, at the direction of the Requisite Majority of each Class 3 subclass, shall join in or separately file adversary proceedings in the Bankruptcy Court or shall initiate or join in litigation in any other court of competent jurisdiction (on behalf of the M&M Lien Claimants within the relevant Class 3 subclass that elected to participate) against Non-Settling Unassigned WIOs and Non-Settling Late-Assigned WIOs.  **The relief sought in the adversary proceeding or other litigation shall include a determination of the validity and perfection of the M&M Lien Claims and a judicial foreclosure of any relevant M&M Liens against the Unassigned Working Interests of the Non-Settling Unassigned WIOs and the Late-Assigned Working Interests of the Non-Settling Late Assigned WIOs.**  This provision is without prejudice to any dispute concerning the jurisdiction of the Bankruptcy Court to determine claims by the M&M Lien Agent or an M&M Lien Claimant against a Non-Settling Unassigned WIO or a Non-Settling Late-Assigned WIO.

### 8.17.   Liens.

All M&M Liens shall remain in full force and effect unless and until satisfied in accordance with this Plan and/or any M&M Lien/WIO Settlement.  Any Liens against the relevant M&M Lien Subclass Collateral and against any Collateral related to any Unassigned Working Interest sold by the Debtor shall attach to the cash consideration from the sale thereof in the same priority that existed as of the Confirmation Date.

### 8.18.   Procedures Order Governs WIO Suspense Funds and Debtor's Suspense Funds

The rights and Liens granted by the Procedures Order to Holders of Allowed M&M Lien Claims in the WIO Suspense Funds and the Debtor's Suspense Funds shall remain in effect until the distribution of all such funds pursuant to this Plan.

## <u>ARTICLE IX</u>
## TREATMENT OF UNASSIGNED WORKING INTEREST CLAIMS

### 9.01.   General Treatment:  settlement or litigation

Except to the extent an Unassigned Working Interest Claim has been resolved pursuant to an M&M Lien/WIO Settlement approved, or an Order of the Bankruptcy Court entered, on or before the Effective Date (any such M&M Lien/WIO Settlement and Order shall remain in full force and effect notwithstanding the occurrence of the Confirmation Date or the Effective Date), Unassigned Working Interest Claims shall be resolved and treated through the settlement option set forth in Section 9.03 of the Plan or the litigation option set forth in Section 9.04 of the Plan, at the election of the Unassigned WIO.   Notwithstanding the foregoing, the allowance and treatment of any Claim asserted by an Unassigned WIO that pertains to an Unassigned Working Interest in a mineral interest lease that expired, lapsed, or was terminated after the Petition Date shall be determined as provided in Section 9.07 below.

### 9.02.   Election to settle or litigate

Each Unassigned WIO must make an election to settle all of its Unassigned Working Interest Claims or litigate all of its Unassigned Working Interest Claims by completing, signing, and returning to counsel for the Debtor (at the address or fax number set forth in Section 16.01 of the Plan) an Unassigned WIO Election Form **no later than the Ballot Deadline**.  To be timely, an Unassigned WIO Election Form must be:  (a) received on or before the Ballot Deadline, (b) postmarked by first class, certified, or registered mail on or before the Ballot Deadline, or (c) received by fax on or before the Ballot Deadline, or (d) sent by a delivery service where the documentation provided by the delivery service contains a date showing the Election Form was sent on or before the Ballot Deadline.

Unassigned WIOs who (a) do not timely submit a properly completed and signed WIO Election Form on or before the Ballot Deadline, or (b) elect to settle their Unassigned Working Interest Claims on the Unassigned WIO Election Form, but do not make an election on the Election Form pursuant to Section 9.03 as to whether they elect to receive the Assigned Settlement Interest or the WIO Sales Proceeds, as defined in Section 9.03(a)(2), shall be deemed to be Settling Unassigned WIOs, shall be deemed to have elected to receive the WIO Sale

Proceeds pursuant to Section 9.03(a)(2) in lieu of the Assigned Settlement Interest pursuant to Section 9.03(a)(1) as to all of their Unassigned Working Interest Claims, shall otherwise be bound by the provisions of Section 9.03 of the Plan, and shall not be permitted to litigate their Unassigned Working Interest Claims under Section 9.04 of the Plan.

**9.03. Settlement option.**

(a)   Under the settlement option, the Holder of an Unassigned Working Interest Claim shall be entitled to receive (in full satisfaction, settlement, release and discharge of its Allowed Unassigned Working Interest Claim), at the Holder's option as indicated by the Holder on the Unassigned WIO Election Form, either:

1. An assignment (subject to any obligations to M&M Lien Claimants under the Plan) of a reduced percentage, as set forth in Section 9.03(b) of the Plan, of the relevant Unassigned Working Interest reflected on the WIO Schedules (the "Assigned Settlement Interest"), **or**

2. A reduced percentage, as set forth in Section 9.03(b) of the Plan, of any sales proceeds attributable to the sale by the Debtor of the relevant Unassigned Working Interest (after satisfaction of any obligations to M&M Lien Claimants under the Plan) reflected on the WIO Schedules (the "WIO Sales Proceeds").

The foregoing election to receive either an Assigned Settlement Interest or WIO Sales Proceeds shall apply to all Unassigned Working Interest Claims held by each Unassigned WIO.  That is, an Unassigned WIO may not elect to receive an Assigned Settlement Interest as to one or more (but less than all) Unassigned Working Interest Claims held by such Unassigned WIO and to receive WIO Sales Proceeds as to other Unassigned Working Interest Claims.  The "Assigned Settlement Interest" and the "WIO Sales Proceeds" are referred to collectively herein as the "Settlement Interest."

(b)   The quantum of the Assigned Settlement Interest to be received by a Settling Unassigned WIO electing to receive an Assigned Settlement Interest pursuant to Section 9.03(a)(1) shall be eighty-five percent (85%) of the relevant Unassigned Working Interest reflected on the WIO Schedules.  The quantum of WIO Sales Proceeds to be received by a Settling Unassigned WIO electing to receive WIO Sales Proceeds pursuant to Section 9.03(a)(2) shall be eighty-five percent (85%) of the sales proceeds attributable to the entire relevant Unassigned Working Interest reflected on the WIO Schedules.

(c)   **The Unassigned Working Interests of Settling Unassigned WIOs electing to receive WIO Sales Proceeds in lieu of an Assigned Settlement Interest shall be sold by the Debtor along with the Debtor's interests in the property in question.  If a Settling Unassigned WIO submits an Unassigned WIO Election Form electing to settle its Unassigned Working Interest Claim, but fails to indicate on such Election Form whether it elects to receive the Assigned Settlement Interest under Section 9.03(a)(1) or the WIO Sales Proceeds under Section 9.03(a)(2), the Settling Unassigned WIO shall be deemed to have elected to receive the WIO Sales Proceeds, and the Debtor shall be permitted to sell such Unassigned Working Interest.**

**If a Settling Unassigned WIO elects, or is deemed to have elected, to receive the WIO Sales Proceeds but one or more of its Unassigned Working Interests are not sold by the Debtor, then, solely with respect to such unsold Unassigned Working Interest(s), the Settling Unassigned WIO shall receive an Assigned Settlement Interest or such other treatment as may be agreed to by such Settling Unassigned WIO and the Creditor Trustee.**

(d)     A list reflecting the Unassigned Working Interests that the Debtor and the Creditors Committee believe qualify for a Settlement Interest is attached hereto as Exhibit 9.  A list reflecting the Unassigned Working Interests that the Debtor and the Creditors Committee believe do *not* qualify for a Settlement Interest is attached hereto as Exhibit 10.

(e)     To qualify for a Settlement Interest, an Unassigned WIO whose Unassigned Working Interest is not on Exhibit 9 must present the following documentation to the Creditor Trustee no later than thirty (30) days after the Effective Date:

1.     Proof of payment or other consideration provided for the purchase of the Unassigned Working Interest; *and either*

2.     A participation agreement, an election letter, an Authorization For Expenditure (typically referred to as an AFE), or other document (excluding a check or other evidence of payment) executed by Reichmann or the Unassigned WIO, or a Final Order of a court of competent jurisdiction, and containing either (a) a legal description of the property that is subject to the Unassigned Working Interest or (b) other identifying information that describes the property or well that is subject to the Unassigned Working Interest with reasonable certainty.  An AFE that does not meet the foregoing conditions is insufficient to satisfy the requirements for Settlement Interest; *or*

3.     proof of payment (subject to any applicable rights of setoff as provided in this Plan) of all joint interest billings and lease operating and drilling expenses associated with the Unassigned Working Interest through the Effective Date.

(f)     The Creditor Trustee shall determine, in his sole and reasonable discretion and in consultation with the Plan Committee, whether the documentation presented by a Settling Unassigned WIO is sufficient to qualify the Unassigned WIO for a Settlement Interest, based upon the criteria set forth in Section 9.03(e) and any other documentation the Creditor Trustee, in consultation with the Plan Committee, deems relevant.  The Creditor Trustee shall notify the Unassigned WIO of his decision within ten (10) Business Days of receipt of the documentation from the Unassigned WIO.  If the Creditor Trustee concludes that an Unassigned WIO does not qualify for a Settlement Interest, such Settling Unassigned WIO may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 9014, challenging the Creditor Trustee's conclusion.  The Bankruptcy Court shall review such conclusion on a de novo basis, applying the factors set forth in Section 9.03(e) above.  Such motion must be filed within ten (10) Business Days after the Creditor Trustee notifies the Unassigned WIO of his decision; otherwise, the Creditor Trustee's conclusion shall be final and non-appealable.  If the Creditor Trustee

concludes and the Bankruptcy Court determines, upon motion of an Unassigned WIO, that an Unassigned WIO does not qualify for a Settlement Interest, such Settling Unassigned WIO may file a proof of claim on account of its Unassigned Working Interest with the Bankruptcy Court within thirty (30) days after the Creditor Trustee delivers written notice of its determination to the Unassigned WIO, or if the Unassigned WIO timely challenges the Creditor Trustee's decision, then within thirty (30) days after the Bankruptcy Court signs an order denying such challenge, and such proof of claim shall be treated as a General Unsecured Claim under Class 8 of the Plan.

(g)     In the event there are no unpaid M&M Lien Claims reflected on the M&M Lien Schedule with respect to the property that is the subject of a Settling Unassigned Working Interest, the following will occur no later than forty-five (45) days after the Effective Date:

1.   The WIO Suspense Funds, after deducting the Settling Unassigned WIO's share of any unpaid WIO Expenses (subject to Section 9.06(b) below), shall be paid by the Creditor Trustee to the Settling Unassigned WIO; and

2.   An assignment (substantially in the form of Exhibit 11 to the Plan) of the Assigned Settlement Interest shall be delivered by the Creditor Trustee to the Settling Unassigned WIO who has elected to receive an Assigned Settlement Interest pursuant to Section 9.03(a)(1). Such assignment shall be on an "as is, where is" basis, with no warranty of title.

(h)     In the event there are no unpaid M&M Lien Claims reflected on the M&M Lien Schedule with respect to the property that is the subject of a Settling Unassigned Working Interest, the Creditor Trustee shall pay the WIO Sales Proceeds to the Settling Unassigned WIO who has elected to receive WIO Sales Proceeds pursuant to Section 9.03(a)(2) no later than the later of (i) thirty (30) days after the closing of the Debtor's sale of the relevant Unassigned Working Interest, or (ii) forty-five (45) days after the Effective Date.

(i)     In the event there are M&M Lien Claims reflected on the M&M Lien Schedule with respect to a Reichmann Well that is the subject of a Settling Unassigned Working Interest, a Settling Unassigned WIO shall be required to pay the following amount (defined in Section 1.52 as the "Formula Amount") to the Holders of Allowed M&M Lien Claims in the subclass of Class 3 that relates to the property at issue:

| Percentage of Unassigned Working Interest of such Settling Unassigned WIO Reflected on the WIO Schedules for the Property at Issue Total Percentage of all Unassigned Plus Late-Assigned Working Interests for the Property at Issue | X | The Lesser of (i) Total Allowed M&M Lien Claims on the the Property at Issue or (ii) 50% of the Stipulated Value of all Unassigned Working Interests for the Property at Issue |

The Formula Amount shall be paid by the Settling Unassigned WIO as set forth in Sections 8.10 and 8.11 of the Plan.

(j)      In the event there are Allowed Cure Claims or other debts determined to be owed by Reichmann to the operator of a particular Non-Reichmann Well relating a particular well that is the subject of a Settling Unassigned Working Interest, a relevant Settling Unassigned WIO shall be required to pay the following amount (defined in Section 1.70 as the "Non-Reichmann Well Debt") to the operator of the well at issue as a condition precedent to receiving the Assigned Settlement Interest or WIO Sales Proceeds, as applicable, with respect to such Non-Reichmann Well:

| 100% of the Percentage of Unassigned Working Interest of such Settling Unassigned WIO Reflected on the WIO Schedules for the Non-Reichmann Well | X | Total Debt Determined to be Owed and Unpaid to the Operator of the Non-Reichmann Well by All Unassigned WIOs on Such Non-Reichmann Well |
|---|---|---|

A Settling Unassigned WIO's Non-Reichmann Well Debt shall first be paid from WIO Suspense Funds, if any, attributable to such Settling Unassigned WIO's Unassigned Working Interest in such Non-Reichmann Well.  With respect to a Settling Unassigned WIO who elects to receive WIO Sales Proceeds, a Settling Unassigned WIO's Non-Reichmann Well Debt shall next be paid from WIO Sales Proceeds, if any, attributable to such Settling Unassigned WIO's Unassigned Working Interest in such Non-Reichmann Well.  If the WIO Suspense Funds of a Settling Unassigned WIO who elects to receive an Assigned Settlement Interest are insufficient to pay such Settling Unassigned WIO's Non-Reichmann Well Debt, such Settling Unassigned WIO must pay the remaining amount of such Non-Reichmann Well Debt to the operator of the Non-Reichmann Well prior to receiving an assignment of its Assigned Settlement Interest.  Any excess WIO Suspense Funds or WIO Sales Proceeds remaining after satisfaction of a Settling Unassigned WIO's payment of the Non-Reichmann Well Debt to the operator of the well at issue shall be paid by the Creditor Trustee to the Settling Unassigned WIO within twenty (20) Business Days after payment in full of the Non-Reichmann Well Debt.  An assignment to a Settling Unassigned WIO who elects to receive the Assigned Settlement Interest with respect to a Non-Reichmann Well shall be delivered to the Settling Unassigned WIO within twenty (20) Business Days after payment in full of the Non-Reichmann Well Debt.

(k)      Conoco-Phillips Company ("Conoco"), in its capacity as the operator of the Villareal #1 and Villareal #3 Non-Reichmann Wells (the "Villareal Wells"), contends that it has a contractual preferential right (a "Preferential Right") to acquire certain interests in the Villareal Wells, including interests claimed as Unassigned Working Interests by certain Unassigned WIOs.  The Debtor, no later than the commencement of the Confirmation Hearing, shall give written notice to each Unassigned WIO whose Unassigned Working Interest may be subject to the alleged Preferential Right in the Villareal Wells.  Such notice shall identify Conoco as the party who asserts the Preferential Right and the interests that are subject to such Preferential Right.  The timely provision of any such notice shall suspend the following issues (the "Suspended Issues"):  (1) the Debtor's right to sell any portion of the affected interest, (2) the Debtor's obligation to deliver an Assigned Settlement Interest, WIO Sales Proceeds, or WIO Suspense Funds to a Settling Unassigned WIO with respect to an affected Unassigned Working Interest, and (3) the obligation of a Settling Unassigned WIO to pay any Non-Reichmann Well Debt as provided in sections 9.03(i) and 9.03(j), respectively, with respect to an affected

Unassigned Working Interest until the Preferential Right asserted by the operator of the Non-Reichmann Well has been resolved by the agreement of all affected parties or by a Final Order. Any disputes between an operator of a Non-Reichmann Well and an Unassigned WIO concerning the enforceability of any alleged Preferential Right, and the amount of consideration required to exercise any enforceable Preferential Right, shall be resolved by an agreement among the relevant parties or by a Final Order. Any such agreement or Final Order shall address the disposition of the Suspended Issues. If an agreement of the parties or a Final Order upholds a Preferential Right to acquire the Unassigned Working Interest of a Settling Unassigned WIO, then any consideration payable by the party exercising the Preferential Right shall be allocated as follows: 15% to the Creditor Trust and 85% to the Settling Unassigned WIO.

(l)     The assignment to the Settling Unassigned WIO electing to receive an Assigned Settlement Interest in a property on which M&M Lien Claims have been filed as reflected on the M&M Lien Schedule shall be made and delivered to the Settling Unassigned WIO contemporaneously with the execution and delivery of any applicable Production Payment Assignment pursuant to Sections 8.10 and 8.11 of the Plan. Such assignment shall be on an "as is, where is" basis, with no warranty of title.

(m)     No WIO Suspense Funds, WIO Sales Proceeds or other funds attributable to a Settling Unassigned Working Interest shall be released by the Creditor Trustee to the Settling Unassigned WIO, and no Assignment Settlement Interest shall be assigned to a Settling Unassigned WIO, until the Settling Unassigned WIO has satisfied its obligation to pay the Formula Amount as required by Section 9.03(i) and any and all post-petition WIO Expenses incurred by Reichmann attributable to the relevant Unassigned Working Interest of the Settling Unassigned WIO. To the extent WIO Suspense Funds, WIO Sales Proceeds or other funds attributable to the Unassigned Working Interest of a Settling Unassigned WIO are insufficient to pay the post-petition WIO Expenses attributable to such Unassigned Working Interest, the Unassigned WIO shall remain liable to the Creditor Trust for such post-petition WIO Expenses. The assignment to a Settling Unassigned WIO who has elected to receive the Assigned Settlement Interest pursuant to Section 9.03(a)(1) shall be expressly subject to the Settling Unassigned WIO's obligation to pay the Formula Amount and the Production Payment Assignment required pursuant to Sections 8.10 and 8.11 of the Plan.

(n)     By electing, or being deemed to have elected, to settle its Unassigned Working Interest Claim(s) under this Section 9.03, the Settling Unassigned WIO releases, discharges and forever holds harmless the Debtor, the Creditor Trust and the Holders of Allowed M&M Lien Claims in the relevant subclass of Class 3 (the "Released Parties") from any and all claims the Settling Unassigned WIO may have against the Released Parties as of the Effective Date in any way related to the Unassigned Working Interest, including but not limited to (i) any Secured Claims, (ii) any General Unsecured Claims, (iii) any claims relating to Reichmann's prior failure to assign an Unassigned Working Interest, (iv) any claims for alleged pre-Petition Date prepayments made to the Debtor for drilling or other purposes, (v) claims for monetary damages of any kind, including attorneys' fees or interest, (vi) damages resulting from payment of Allowed M&M Lien Claims, and (vii) any right of subrogation arising from or related to the Settling Unassigned WIO's payment, or assignment of funds for payment, of M&M Lien Claims pursuant to this Section 9.03.

(o)      A Settling Unassigned WIO shall have the right to object to any post-Petition Date WIO Expenses charged to such Settling Unassigned WIO by serving an objection to such WIO Expense(s) on the Creditor Trustee within ten (10) Business Days after the Effective Date.   Any objections to such WIO Expenses that are not timely served on the Creditor Trustee are waived by the Settling Unassigned WIO.  The Creditor Trustee shall notify the Settling Unassigned WIO of his determination with respect to any WIO Expenses to which a timely objection has been served within twenty (20) days after receipt of such objection.  In the event a Settling Unassigned WIO is dissatisfied with the Creditor Trustee's determination, such Settling Unassigned WIO may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 9014, within twenty (20) Business Days of the Settling Unassigned WIO's receipt of the Creditor Trustee's determination, seeking a determination regarding such WIO Expenses.  If a timely motion is not filed with the Bankruptcy Court by the Settling Unassigned WIO, the Creditor Trustee's determination shall be final.  With respect to a timely motion, the Bankruptcy Court's determination shall be final and non-appealable.

(p)      If any Settling Unassigned WIO or Settling Late-Assigned WIO wishes to bring a preference, fraudulent transfer, or similar claim under the Bankruptcy Code or Texas law against any party who received a pre-Petition Date assignment and who does not fall within the definition of a Late-Assigned WIO for the sole purpose of seeking contribution from such party for a portion of the Formula Amount required to be paid by the Settling Unassigned WIO or Settling Late Assigned WIO under this Plan, such Settling Unassigned WIO or Settling Late Assigned WIO shall first be required to give written notice to the Creditor Trustee of the party against whom the Settling Unassigned WIO or Settling Late-Assigned WIO desires to bring such a claim *and sufficient facts concerning such claim to enable the Creditor Trustee to determine whether to pursue the claim*.[3]  The Creditor Trustee shall have twenty (20) days after receipt of such written notice to notify the Settling Unassigned WIO or Settling Late-Assigned WIO whether the Creditor Trustee intends to assert such a claim against such party, and shall have sixty (60) days after receipt of such written notice to assert such a claim.  If the Creditor Trustee provides timely notice of his intention to assert such a claim and files suit on such claim within the foregoing time periods, the Settling Unassigned WIO or Settling Late-Assigned WIO shall be precluded from asserting such a claim.  If, however, the Creditor Trustee does not provide such notice or does not file suit on such claim within such time periods, then the Settling Unassigned WIO or Late-Assigned WIO may bring such claim against the party identified in the notice to the Creditor Trustee, but only for the sole purpose of seeking contribution from such party to reimburse the Settling Unassigned WIO or Settling Late-Assigned WIO for a portion of the Formula Amount such Settling Unassigned WIO or Settling Late-Assigned WIO is required to pay under this Plan.

### 9.04.   Litigation option.

(a)      **General; Election to litigate.**  The Unassigned Working Interest Claims of Non-Settling Unassigned WIOs shall be deemed to be Disputed Claims (without the necessity of any party filing an objection to such Claims) and shall be determined in an adversary proceeding to be filed in the Bankruptcy Court by the Creditor Trustee or, to the extent authorized by the

---

[3] To assist a Settling Unassigned WIO or Settling Late-Assigned WIO in determining whether any such claims exist, the applicable records of the Debtor will be made reasonably available by the Debtor and/or the Creditor Trustee as applicable.

applicable Requisite Majority of the applicable M&M Lien Claimants, the M&M Lien Agent, or to the extent permitted by Section 9.04(b)(2), by the relevant Non-Settling Unassigned WIO. Nothing in the Plan shall alter: (1) the right, if any, to a jury trial that any party may have under applicable law regarding any of the matters that may be litigated under this litigation option; (2) the right, if any, of any party to request that any matter litigated under this litigation option be heard by a federal district court or any other court of competent jurisdiction as opposed to the Bankruptcy Court; or (3) the rights, remedies and interests of and attributable to such Unassigned Working Interest Claim.  In any such adversary proceeding or litigation, the Non-Settling Unassigned WIO shall have the burden arising under applicable law with respect to proving the allowance of its Unassigned Working Interest Claim.

1.   The issues to be determined under the litigation option shall include, without limitation, (A) whether the Unassigned Working Interest Claim asserted by the Holder thereof is valid, enforceable, (B) whether Reichmann's alleged assignment or transfer of an interest in a Reichmann Well or a Non-Reichmann Well is avoidable under applicable law, (C) the validity, extent, and priority, if any, of any Lien solely with respect to an Unassigned Working Interest under applicable law, (D) the amount of WIO Expenses, if any, owed by the Non-Settling Unassigned WIO, and (E) **the judicial foreclosure of the M&M Liens asserted by the Holders of Allowed M&M Lien Claims (to the extent such relief is sought by the M&M Lien Agent and the M&M Lien Claimants)**.

2.   Any funds held in suspense in the Debtor's DIP Revenue Account on behalf of the Non-Settling Unassigned WIO, as well as any future revenue attributable to the Non-Settling Unassigned WIO's Working Interests shall remain in suspense pending a final, non-appealable determination of the Bankruptcy Court, as applicable, as to the Non-Settling Unassigned WIO's entitlement to such funds.

3.   A Non-Settling Unassigned WIO's Unassigned Working Interests shall be held in suspense by the Debtor pending the entry of a Final Order determining the rightful ownership of any such Unassigned Working Interest.

4.   The only parties entitled to participate in the litigation shall be the Non-Settling Unassigned WIO, the Debtor, the Creditor Trust, and, if applicable, the operator of a Non-Reichmann Well, the Holder of any M&M Lien on the property to which the Unassigned Working Interest Claim relates, and the M&M Lien Agent.

5.   During a period of twenty-eight (28) days after the Effective Date, the Creditor Trustee and/or the M&M Lien Agent, and only the Creditor Trustee and/or the M&M Lien Agent, may file an adversary proceeding in the Bankruptcy Court, pursuant to the Bankruptcy Rules, to determine the validity, extent and/or avoidance of any Unassigned Working Interest of a Non-Settling Unassigned WIO.  If the Creditor Trustee and/or the M&M Lien Agent do not initiate such litigation against a Non-Settling Unassigned WIO during such 28-day period, then the Non-Settling Unassigned WIO must initiate such litigation by filing an adversary proceeding in the Bankruptcy Court, pursuant to the Bankruptcy Rules, no later than fifty-six (56) days after the Effective Date.   All Unassigned Working Interest Claims of a Non-Settling Unassigned WIO who is not sued by the Creditor Trustee and/or the M&M Lien Agent and who fails to timely file such an

adversary proceeding shall be automatically disallowed, and the Creditor Trustee may submit an order to the Bankruptcy Court to disallow such Claim.

6.  The Bankruptcy Court may issue such orders as it deems appropriate to govern the procedures for litigating the Unassigned Working Interest Claims subject to this Section 9.04(c).  The Bankruptcy Court may also order that such Unassigned Working Interest Claims be submitted to a special master or a magistrate if permitted by otherwise applicable law (this Plan does not create any right to have any matter heard by a special master or magistrate that does not otherwise exist under applicable law).  Any such special master or magistrate shall submit proposed findings of fact and conclusions of law to the Bankruptcy Court, and the Bankruptcy Court will enter a judgment after considering such proposed findings and conclusions after reviewing *de novo* any matters to which any party has timely and specifically objected.

7.  Each party to the litigation shall pay its own fees, costs, and expenses of the litigation, including attorney's fees, regardless of the outcome of the litigation, unless the Bankruptcy Court (or the special master or magistrate, as may be applicable) rules otherwise based on applicable law.  This Plan does not alter any right, if any, to attorney's fees and expenses under otherwise applicable law.

8.  Except as otherwise provided in this Plan or the Creditor Trust Agreement, the parties to the litigation may settle their disputes on any terms agreeable to them without approval of the Bankruptcy Court.

9.  In the event a Non-Settling Unassigned WIO prevails in the litigation, such Non-Settling Unassigned WIO shall pay to the Creditor Trust, as a condition precedent to receiving any assignment with respect to the Unassigned Working Interest at issue, all post-petition WIO Expenses attributable to such Unassigned Working Interest.

(b)    **Distributions to Non-Settling Unassigned WIOs with Allowed Unassigned Working Interest Claims.**  The Holder of an Unassigned Working Interest Claim that is Allowed through litigation pursuant to Section 9.04(a) of the Plan shall be entitled to receive (in full satisfaction, settlement, release and discharge of its Allowed Unassigned Working Interest Claim) an assignment from the Creditor Trustee of the Unassigned Working Interest (plus all Net Production Proceeds attributable thereto, without reduction for any other Claim but subject to any right of setoff by the Debtor or the Creditor Trust) to which such Non-Settling Unassigned WIO is entitled pursuant to a Final Order or a settlement under Section 9.04(a)(8) of the Plan that fully resolve such litigation.  Such assignment shall be on an "as is, where is" basis, with no warranty of title.  The Creditor Trustee shall deliver such assignment to the last known address of the relevant Non-Settling Unassigned WIO within ten (10) Business Days after the Final Order becomes a Final Order or the full execution of the settlement agreement, as applicable; provided, that (a) the Creditor Trustee shall not be required to deliver such assignment until the Non-Settling Unassigned WIO has paid to the Creditor Trust any unpaid WIO Expenses determined by a Final Order or settlement agreement to be payable by the Non-Settling Unassigned WIO, and (b) the Unassigned Working Interest that is subject to the assignment delivered by the Creditor Trustee shall remain subject to any Allowed M&M Lien Claims and

related M&M Liens, and the foreclosure of same, as determined by a Final Order or settlement agreement.

### 9.05.   Treatment Pending Allowance or Disallowance

Pending the allowance or disallowance of an Unassigned Working Interest Claim pursuant to this Article IX of the Plan or a prior Final Order of the Bankruptcy Court, the Procedures Order shall govern the rights, duties, and obligations of all interested parties with respect to any Unassigned Working Interest.

### 9.06.   Payment of Certain Expenses by Unassigned WIOs

(a)     If an Unassigned WIO does not receive a Settlement Interest under Section 9.03 or an assignment of its claimed Unassigned Working Interest under Section 9.04 for a particular well or lease, no deductions may be made or charges assessed against such Unassigned WIO for such well or lease, and no charges or assessments owed by the Unassigned WIO as to such well or lease may be applied to amounts that otherwise are owed to the Unassigned WIO for its interests in other wells or leases.  For example, if an Unassigned WIO will not receive a Settlement Interest or an assignment with respect to its claimed Unassigned Working Interest in the Cowels No. 1 well, no amount that is allegedly owed by such Unassigned WIO for the Cowels No. 1 well may be deducted from amounts that are owed to such Unassigned WIO for its interest in any other well or lease.

(b)     When deducting amounts that Settling Unassigned WIOs owe from December 1, 2006 and thereafter as to any lease or well in which the Settling Unassigned WIO receives a Settlement Interest, the amount that may be charged to the Settling Unassigned WIO with respect to that Settlement Interest shall be proportionate to the 85% Settlement Interest of the Settling Unassigned WIO in the property in issue.

### 9.07.   Unassigned Working Interest Claims Related to Expired Leases

Certain Unassigned WIOs have asserted Unassigned Working Interest Claims in mineral interest leases and/or wells that have been abandoned, or have expired on their own terms, after the Petition Date.  Such Unassigned Working Interests and abandoned or expired leases and/or wells are identified on Exhibit 12 to this Plan.  Further, additional leases could expire or be abandoned before a Settling Unassigned WIO receives its Settlement Interest.  No Holder of an Unassigned Working Interest Claim related to or arising from any such abandoned or expired lease and/or well shall receive any Distribution under Class 5 on account of or related to such abandoned or expired lease and/or well.  The Holder of any such Unassigned Working Interest Claim shall be entitled, in lieu of such a Class 5 Distribution, to file a proof of claim or an application for Administrative Claim related to or arising from any such abandoned or expired lease and/or well with the Bankruptcy Court no later than the later of twenty (20) days after the Effective Date or the date when the Debtor or the Creditor Trustee notifies an Unassigned WIO of the expiration of a lease to assert any claims, rights, and/or damages allegedly arising as a result of the abandonment or expiration of the relevant lease or well and the extinguishment and disallowance of such Holder's Unassigned Working Interest Claim.  The Debtor or the Creditor Trustee may file an objection to any such proof of claim within thirty (30) days after it is filed.

The Bankruptcy Court shall determine the allowance, validity, and priority of any such timely filed claim for purposes of treatment under this Plan.

## ARTICLE X
## TREATMENT OF LATE-ASSIGNED WORKING INTERESTS

### 10.01.  Election by Late-Assigned Interest Holders

Each Late-Assigned WIO must make an election (1) to pay a fixed amount of the Allowed M&M Lien Claims pertinent to its Late-Assigned Working Interest pursuant to Section 10.02 below ("Settling Late-Assigned WIO") or (2) to have its Late-Assigned Working Interest remain subject to the Liens of Allowed M&M Lien Claims on the property in which the Late-Assigned WIO asserts its Late-Assigned Working Interest pursuant to Section 10.03 below. Such election must be made by completing, signing, and returning to counsel for the Debtor (at the address set forth in Section 16.01 of the Plan) a Late-Assigned Election Form **no later than the Ballot Deadline**.  To be timely, a Late-Assigned Election Form must be:  (a) received on or before the Ballot Deadline, (b) postmarked by first class, certified, or registered mail on or before the Ballot Deadline, or (c) sent by a delivery service where the documentation provided by the delivery service contains a date showing the Election Form was sent on or before the Ballot Deadline.  For purposes of this election, a party shall be deemed to be a Late-Assigned WIO if the recording date of the assignment as reflected on the Reichmann WIO Schedule is after the lien commencement date as reflected on the Reichmann WIO Schedule.

**Late-Assigned WIOs who elect payment pursuant to Section 10.02 on the Late-Assigned Election Form or who do not timely submit a properly completed and signed Late-Assigned Election Form on or before the Ballot Deadline shall be deemed to have elected the payment option under Section 10.02 and shall be bound by the provisions of the Plan.**

### 10.02.  Payment of Allowed M&M Lien Claims by Late-Assigned Interest Holders

(a)     In the event there are M&M Lien Claims reflected on the M&M Lien Schedule with respect to a Reichmann Well that is the subject of a Late-Assigned Working Interest, a Settling Late-Assigned WIO shall be required to pay the following amount (defined in Section 1.52 as the "Formula Amount") to the Holders of Allowed M&M Lien Claims in the subclass of Class 3 that relates to the property at issue:

| Percentage Late-Assigned Working Interest of such Late-Assigned WIO Reflected on the WIO Schedules for the Property at Issue X Total Percentage of All Unassigned Plus Late-Assigned Working Interests for the Property at Issue | The Lesser of (i) Total Allowed M&M Lien Claims on the Property Property or (ii) 50% of the Stipulated Value of all Late-Assigned Working Interests for the Property at Issue |
|---|---|

The Formula Amount shall be paid by the Late-Assigned WIO as set forth in Section 8.10 of the Plan.

(b)    In the event there are Allowed Cure Claims or other debts determined to be owed by Reichmann to the operator of a Non-Reichmann Well that is the subject of a Late-Assigned Working Interest, a relevant Settling Late-Assigned WIO shall be required to pay the following amount (defined in Section 1.70 as the "Non-Reichmann Well Debt") to the operator of the well at issue as a condition precedent to receiving any WIO Suspense Funds with respect to such Non-Reichmann Well:

| Percentage of Late-Assigned Working Interest of Such Late-Assigned WIO Reflected on the WIO Schedules for the Non-Reichmann Well Percentage of Reichmann's Working Interest in the Non-Reichmann Well Reflected on the WIO Schedules for the Non-Reichmann Well | X | Total Allowed Cure Claim and Other Debt Determined to be Owed to the Operator of the Non-Reichmann Well by Reichmann and Late-Assigned WIOs on Such Non-Reichmann Well |
|---|---|---|

A Settling Late-Assigned WIO's Non-Reichmann Well Debt shall first be paid from WIO Suspense Funds, if any, attributable to such Settling Late-Assigned WIO's Late-Assigned Working Interest in such Non-Reichmann Well.  If the WIO Suspense Funds of a Settling Late-Assigned WIO are insufficient to pay such Late-Assigned WIO's Non-Reichmann Well Debt, such Settling Late-Assigned WIO must pay the remaining amount of such Non-Reichmann Well Debt to the operator of the Non-Reichmann Well prior to receiving any further revenue from such well, and the operator of such Non-Reichmann Well may take any and all action allowed under applicable law against such Late-Assigned WIO to collect the remaining amount of such Settling Late-Assigned WIO's Non-Reichmann Well Debt.   Furthermore, a Settling Late-Assigned WIO shall not be permitted to sell or transfer its Late-Assigned Working Interest until satisfaction in full of its Non-Reichmann Well Debt.   Any excess WIO Suspense Funds remaining after satisfaction of a Settling Late-Assigned WIO's Non-Reichmann Well Debt to the operator of the well at issue shall be paid by the Creditor Trustee to the Settling Late-Assigned WIO within twenty (20) Business Days after payment in full of the Non-Reichmann Well Debt.

(c)    No WIO Suspense Funds or other funds held by the Debtor attributable to a Late-Assigned Working Interest shall be released by the Creditor Trustee to the Late-Assigned WIO until it shall have satisfied its obligation to pay the Formula Amount and the Non-Reichmann Well Debt as required by this Section 10.02.  To the extent the WIO Suspense Funds are insufficient to pay a Late-Assigned WIO's Formula Amount, the Settling Late-Assigned WIO shall execute a Production Payment Assignment on behalf of the Late-Assigned Interest Owner in favor of the M&M Lien Agent pursuant to Section 8.10(d) of the Plan.

(d)    By submitting an Election Form electing to pay a fixed amount of the Allowed M&M Lien Claims under this Section 10.02, the Late-Assigned WIO releases, discharges and forever hold harmless the Debtor, the Creditor Trust and the Holders of M&M Lien Claims in the subclass(es) of Class 3 that relate to the property in which the Late-Assigned WIO asserts it holds a Late Assigned Working Interest (the "Released Parties") from any and all claims the Late-Assigned WIO may have against the Released Parties as of the Effective Date in any way related to the Late-Assigned Working Interest, including but not limited to (i) any Secured Claims, (ii) any General Unsecured Claims, (iii) any claims relating to Reichmann's failure to assign a Late-Assigned Working Interest at an earlier date, (iv) any claims for alleged

pre-Petition Date prepayments made to the Debtor for drilling or other purposes, (v) claims for monetary damages of any kind, including attorneys' fees or interest, (vi) damages resulting from payment of Allowed M&M Lien Claims, and (vii) any right of subrogation arising from or related to the Late-Assigned WIO's payment, or assignment of funds for payment, of M&M Lien Claims pursuant to this Section 10.02.

**10.03.  Retention of Liens by M&M Lien Claimants as Against Late-Assigned Interests**

**In the event a Late-Assigned WIO elects to be treated in accordance with this Section 10.03 instead of paying the Formula Amount set forth in Section 10.02, then each M&M Lien Claimant shall retain its Liens and all related rights and remedies against any Late-Assigned Working Interest and any Late-Assigned WIO and shall be entitled to pursue the immediate foreclosure of such Liens under applicable law notwithstanding any injunction provided under bankruptcy law with respect to the Debtor or its property or any injunction provided in this Plan.**

**10.04.  Potential Avoidance of Late-Assigned Interests**

To the extent a Late-Assigned Interest is avoided or set aside pursuant to an order or judgment of the Bankruptcy Court, the Holder of such Late-Assigned Interest shall be entitled to file a proof of claim with the Bankruptcy Court no later than fourteen (14) days after the entry of such order or judgment to assert a claim for an Unassigned Working Interest in lieu of the avoided Late-Assigned Interest.  The Creditor Trustee may file an objection to any such proof of claim within thirty (30) days after the proof of claim is filed.  Any such claim shall be treated for all purposes as an Allowed Unassigned Working Interest Claim under Article IX of this Plan, provided that the Holder thereof shall be deemed to have elected to be a Settling Unassigned WIO and shall further be deemed to have elected to receive WIO Sales Proceeds with respect to such Holder's Unassigned Working Interest Claim.

### ARTICLE XI
### TREATMENT OF EXECUTORY CONTRACTS

**11.01.  General Treatment of Executory Contracts: Rejected**

The Plan shall serve as a motion to reject, and as of the Effective Date the Debtor shall be deemed to have rejected, all Executory Contracts to which the Debtor is a party, except for Executory Contracts that (a) have been assumed pursuant to Final Order of the Bankruptcy Court or by the Plan, or (b) are the subject of a separate motion pursuant to section 365 of the Bankruptcy Code to be filed and served by the Debtor and determined by order of the Bankruptcy Court on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the rejection of such Executory Contracts as of the Effective Date.  Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be rejected under the Plan, of the intent to reject such Executory Contract.

**11.02.  Cure Payments and Release of Liability**

Pursuant to sections 365(a), (b), (c) and (f) of the Bankruptcy Code, all Cure Claims that may require payment under section 365(b)(1) of the Bankruptcy Code under any Executory Contract that is assumed pursuant to a Final Order of the Bankruptcy Court shall be paid by the Debtor or the Creditor Trust within a reasonable period of time after such order becomes a Final Order with respect to undisputed Cure Amounts and within 15 Business Days following resolution of a motion for payment of a Cure Amount.  If a party to an assumed Executory Contract has not filed an appropriate pleading with the Bankruptcy Court within thirty (30) days after the Effective Date disputing the amount of any Cure Claim payment offered to it, the cure of any other defaults, the promptness of the Cure Claim payments, or the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.

**11.03.  Bar to Rejection Claims**

If the rejection of an Executory Contract by the Debtor results in damages to the other party or parties to such Executory Contract, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Creditor Trust, the Creditor Trustee or their properties or agents, successors, or assigns, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor and the Creditor Trustee within thirty (30) days after the Effective Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim within such time shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, its Estate, the Creditor Trust or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

**11.04.  Rejection Claims**

Any Rejection Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor or the Creditor Trust that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor or the Creditor Trust of any objections to such Rejection Claim if asserted.

### 11.05.  Compensation, Benefit, and Pension Programs

All employee compensation, benefit, indemnification and pension programs of the Debtor, if any, including any programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code that the Debtor entered into before or after the Petition Date and not previously terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected and terminated under the Plan as of the Effective Date.  Notwithstanding the foregoing, the Debtor shall continue to perform its obligations after the Effective Date under the severance pay program the Debtor modified in June 2007 for full-time employees.

## ARTICLE XII
### CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

### 12.01.  Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver of each of the following conditions:

(a)     The Bankruptcy Court shall have approved the Disclosure Statement by a Final Order in form and substance acceptable to the Proponents in their sole and absolute discretion.

(b)     The Confirmation Order shall be in form and substance acceptable to the Proponents in their sole and absolute discretion.

### 12.02.  Conditions Precedent to the Effective Date

The occurrence of the Effective Date of the Plan is subject to the occurrence or waiver of the following conditions precedent:

(a)     Either (i) the Confirmation Order shall have become a Final Order, or (ii) no stay of the Confirmation Order or motion for a stay, or other motion described in Bankruptcy Rule 8002(b), of the Confirmation Order shall be in effect or pending and no other relief shall have been entered nor any facts exist that would render the doctrine of "mootness" inapplicable as a matter of law.

(b)     There shall be no injunction or court order restraining consummation of the transactions provided for in the Plan.

(c)     All Plan Documents, including, without limitation, the Creditor Trust Agreement, shall be in form and substance reasonably acceptable to the Proponents and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

(d)     The closing of a sale of all or substantially all of the "Current Assets," as defined in the Joint Motion of the Debtor and the Official Committee of Unsecured Creditors to Approve Bidding Procedures for Sale of Certain Assets of the Debtor's Estate (docket # 709),

pursuant to an order of the Bankruptcy Court granting a motion to approve the sale of any such assets pursuant to 11 U.S.C. § 363.

The foregoing conditions to the Effective Date of the Plan may be waived in whole or in part by the Proponents, jointly, without notice to any other parties in interest or the Bankruptcy Court, and without any hearing or order of the Bankruptcy Court.  Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect, if the Proponents so elect in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Proponents so elect in writing.  In the event of any such appeal, the Debtor, the Creditors Committee, or the Creditor Trustee the Proponents may seek the dismissal of such appeal as moot following the Effective Date of the Plan.  The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within two (2) Business Days after its occurrence.

### 12.03.  Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Creditor Trust, the Proponents, all present and future Holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each of the Holders of Claims and Interests to the terms and conditions of the Plan, whether or not such Creditor or Interest Holder has accepted the Plan.

### 12.04.  Discharge of Debtor

Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Debtor and the Creditor Trust of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor and the Creditor Trust that arose before the Effective Date.  Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all Claims against and Interests in the Debtor and the Debtor's assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the Holder of the Claim or Interest votes to accept the Plan or is entitled to receive a Distribution under the Plan.  Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any Holder of the discharged Claim or Interest will be precluded from asserting against the Debtor, the Creditor Trust, or any of their assets or properties any other or further Claim or Interest based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.  Except as provided in the Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under

section 1141, and the Debtor will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

Notwithstanding any contrary provision in the Plan or the Exhibits or attachments thereto, the Plan and the Confirmation Order do not impair, discharge or enjoin any M&M Lien/WIO Settlement or the parties' rights, duties and obligations thereunder or any agreements or instruments executed in connection therewith.

### 12.05.  Injunction

*Except as otherwise provided in the Plan, the Confirmation Order or any M&M Lien/WIO Settlement, and only to the extent permitted under and subject to section 1141 of the Bankruptcy Code, from and after the Confirmation Date, all Holders of Claims against and Interests in the Debtor that are discharged pursuant to the Plan or the Bankruptcy Code are permanently restrained and enjoined from taking any of the following actions against the Estate, the Debtor, the Creditor Trust or any of their property on account of any such discharged Claims, debts, liabilities or Interests or rights:  (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, or Interest against the Debtor or the Creditor Trust or their property on account of such Claims, debts, liabilities, or Interests, other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or the Creditor Trust or their property; (c) creating, perfecting, or enforcing any encumbrance or Lien of any kind against the Debtor or the Creditor Trust or their property; (d) except to the extent permitted under the Bankruptcy Code, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due the Debtor or the Creditor Trust or against their property; and (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that each Holder of a Disputed Claim or Interest may continue to prosecute its proof of Claim or Interest in the Bankruptcy Court and all Holders of Claims and Interests shall be entitled to enforce their rights under the Plan, any M&M Lien/WIO Settlement and any agreements executed or delivered pursuant to or in connection with the Plan or any M&M Lien/WIO Settlement.  The foregoing injunction shall extend to the Creditor Trust and its respective property and interests in property.  If allowed by the Bankruptcy Court, any entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 12.06.  Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

### 12.07.  Exculpation

Neither the Creditors Committee, nor its Professionals, its members (solely in their capacity as members of the Creditors Committee), Mark Worthey, Brent Hale, the Debtor's Professionals (including Robert Medlin and Albert Conley in their capacities as Chief Restructuring Officer, Chief Executive Officer, and/or director of the Debtor) will have or incur any liability to any Holder of a Claim or Interest or any other entity for any act or omission in connection with, or arising out of, the formulation, preparation, dissemination, approval, confirmation, administration, or consummation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan or consummation or administration of the Plan or Distributions under the Plan, except for willful misconduct or gross negligence.  The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

## ARTICLE XIII
## CLAM OBJECTIONS AND DISTRIBUTIONS

### 13.01.  Objections to Claims and Interests

Any party in interest, including the Debtor and the Creditor Trustee, may make and file objections to Claims and Interests.  The Proponents have no obligation to administer, dispute, reserve for, object to, compromise, resolve or make distributions with respect to any and all Allowed Claims or Interests.  The Proponents (or their designees, successors and assigns) are not obligated to object to any Claim or Interest, but will nevertheless have standing to object to any such Claim or Interest from and after the Effective Date, if they so elect in their absolute discretion.  Nothing in this Section is intended to limit the right of any party to object to Claims or Interests.

### 13.02.  Objection Deadline

Except as set forth in Sections 2.01(b), 2.01(c), and 8.03(b) of the Plan or as otherwise extended or ordered by the Bankruptcy Court, any objections to Claims and Interests must be filed no later than one hundred twenty (120) days after the Effective Date (unless such day is not a Business Day, in which case such deadline will be the next Business Day thereafter unless extended by an order of the Bankruptcy Court).  An objection to a Claim of Interest will be deemed properly served on the Holder thereof if service is effected by any of the following methods:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or Interest or other representative identified on the proof of Claim or Interest or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Claimant or Interest Holder in the Bankruptcy Case.

### 13.03.  Settlement of Objections to Claims or Interests

From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, the Creditor Trustee and the Debtor shall be entitled to compromise and settle their objections to Disputed Claims subject to the limitations set forth in

the Plan, in accordance with the following procedures, which will constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements of claims:

- If the Face Amount of the Disputed Claim is less than $50,000, the Creditor Trustee and/or the Debtor, as applicable, will be authorized and empowered to settle its objection to such Disputed Claim or Disputed M&M Lien Claim and execute the necessary documents, including a stipulation of settlement or release, upon five (5) Business Days' notice to the Debtor, the Creditor Trustee, and the Plan Committee.

- If the Face Amount of the Disputed Claim is greater than $50,000, the Creditor Trustee and/or the Debtor, as applicable, will be authorized and empowered to settle its objection to such Disputed Claim or Disputed M&M Lien Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fifteen (15) Business Days' notice to the Debtor, the Creditor Trustee, and the Plan Committee.

If any party objects to the proposed settlement of a Disputed Claim within the prescribed time parameters, then (a) if all objecting parties withdraw for any reason their objections to such settlement, the Creditor Trustee or the Debtor, as applicable, may enter into the proposed settlement without further notice, and without the necessity of a motion, hearing or order of the Bankruptcy Court, or (ii) if all objecting parties do not withdraw their objections, the Creditor Trustee or the Debtor, as applicable, will have the option of:

- Foregoing entry into the settlement agreement that is the subject of an objection,

- Modifying the terms of the settlement agreement in a way that results in the withdrawal of all objections, or

- Seeking an order of the Bankruptcy Court in the ordinary course authorizing the Creditor Trustee or the Debtor, as applicable, to enter into the settlement agreement over any pending objections.

### 13.04.  No Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order or the Bankruptcy Code (including section 506(b) of the Bankruptcy Code), post-petition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or an Interest shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim or Disputed Interest in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest. However, in the event sufficient proceeds are available to pay Allowed Class 8 Unsecured Claims in full, such Claims shall also be entitled to receive simple interest on such Claims, at the Federal judgment rate in effect on the Petition Date, prior to any Distribution to Class 9 Claims and Class 10 Interests.  If there are sufficient proceeds to pay Allowed Class 9 Claims if full,

such Claims shall also be entitled to receive simple interest on such claims, at the Federal judgment rate in effect on the Petition Date, prior to any Distribution to Class 10 Interests.

### 13.05.  Notices of Claims Under 506(b)

If the Holder of a Secured Claim believes it is entitled to interest, reasonable fees, costs or charges in accordance with section 506(b) of the Code, such Claimant must file with the Court a Notice of Claim Under 506(b) and serve such Notice on the Creditor Trustee and the Debtor no later than forty-five (45) days after the Effective Date.  The Notice of Claim Under 506(b) must include (a) copies of the agreement(s) under which the claim for interest, reasonable fees, costs or charges arose; (b) a complete calculation of the amount of interest, reasonable fees and costs due including the applicable interest rate and (c) any other supporting documentation including, but not limited to, invoices evidencing attorneys fees.  Any Holder of a Secured Claims that does not file a Notice of Claim Under 506(b) (or does not amend its original proof of Claim by the foregoing deadline to include Claims under 506(b)) and attach documents of the type described in the preceding sentence shall be forever barred from asserting such Claims against the Debtor, the Creditor Trust, any of their successors or assignees, or any of their respective properties; and such Claims will be deemed discharged as of the Effective Date.

Any party may file an objection to any Notice of Claim Under 506(b).  Any such objection must be filed within 120 days from the Effective Date and must be served on the party that filed the subject Notice of Claim Under 506(b), the Creditor Trustee, and the Debtor.

### 13.06.  Setoffs and No Waiver

The Creditor Trustee and the Debtor may, but shall not be required to, set off against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claim, right, or Cause of Action of any nature whatsoever that the Debtor or the Creditor Trustee may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trustee or the Debtor of any such claim, right, or Cause of Action that the Debtor or Creditor Trustee may have against such Holder.

Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code section 553 concerning mutuality or when the respective items subject to setoff under this Section 13.06 arose, but shall be subject to the defenses and rights of the non-Debtor party.  The Holder of a Disputed Claim that asserts a right of setoff will retain that right, subject to any defenses of the Debtor or the Creditor Trustee, until the earlier of the time when (a) the Disputed Claim becomes Allowed, in whole or in part, or (b) the Claim is Disallowed by a Final Order of the Bankruptcy Court.

Consistent with the Procedures Order, neither the Debtor, the Creditor Trustee, nor any other party may seek to setoff against a Working Interest Owner's revenue received (or owed to a Working Interest Owner) after the Petition Date with respect to a particular well to attempt to collect a pre-Petition Date debt alleged to be owed by the Working Interest Owner to the Debtor with respect to such well, except to the extent such pre-Petition Date debt alleged to be owed by such Working Interest Owner on such well exceeds any pre-Petition Date pre-payment (or other)

balance of such Working Interest Owner with respect to such well.  A Working Interest Owner with respect to a Reichmann Well shall not be entitled to setoff a pre-Petition Date pre-payment (or other) balance on a well against a debt alleged to be owed to the Debtor on another well unless such Working Interest Owner has obtained Bankruptcy Court approval to do same through a Motion filed pursuant to section 553 of the Bankruptcy Code.  Nothing in this Plan alters any setoff rights, if any, of any party relating to any M&M Lien/WIO Settlement.

Nothing contained in the Plan will constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtor or the Creditor Trustee may have against any Person in connection with or arising out of any Claim or Interest.

### 13.07.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim or Interests receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Creditor Trustee, failing which, the Creditor Trustee may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

### 13.08.  Reserve Funds

On the Effective Date, or as soon as practicable thereafter, the Creditor Trustee will create an Operating Reserve Fund in the amount of $500,000 to pay bills incurred in the ordinary course of operating the oil and gas interests transferred by the Debtor to the Creditor Trust until sold.  In addition, the Creditor Trustee will create a litigation reserve fund in the amount of $250,000 to pay the reasonable and necessary fees, costs and expenses incurred in administering the claim allowance and distribution process under the Plan and section 502 of the Bankruptcy Code and the enforcement of any Causes of Action.

### 13.09.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)      **No Distributions Pending Allowance.**  No Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  The Debtor and the Creditor Trustee, as applicable and in their sole discretion, may withhold Distributions otherwise due hereunder to the Holder of a Claim until the Objection Deadline, to enable the Debtor or the Creditor Trustee to file a timely objection thereto.  When a Disputed Claim becomes an Allowed Claim, the Debtor or the Creditor Trustee shall make Distributions with respect to such Allowed Claim, without interest (except as otherwise provided in this Plan), net of any setoff and/or any required withholding of applicable taxes.

(b)      **Distribution Reserve Accounts.**  On or after the Effective Date, the Creditor Trustee will create one or more separate Distribution Reserve Accounts as is appropriate from the assets to be distributed to or for the benefit of the Holders of Disputed Claims pending the allowance thereof, the amount of which will be adjusted from time to time as appropriate.  Each Distribution Reserve Account will be segregated by Class or, as applicable, by

Administrative Claims and Priority Tax Claims.  A Claimant will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim, unless permitted by Order of the Bankruptcy Court.  As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim or Interest to post-petition interest on such Claim or Interest, if Allowed, unless otherwise required under the Bankruptcy Code or the Plan.

(c)     **Claim Estimation.**   The Creditor Trustee or the Debtor may request estimation or limitation of any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Disputed Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(d)     **Distributions After Allowance.**   Payments and Distributions from a particular Distribution Reserve Account to each respective Holder of a Disputed Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the Class in which such Claimant is classified.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim becomes undisputed, non-contingent, liquidated, and Allowed, and in any event not later than 30 days after the Disputed Claim becomes an Allowed Claim, the Creditor Trustee will distribute to the Claimant the property from the Distribution Reserve Account that would have been distributed to such Claimant had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the Class in which such Claimant is classified under the Plan.  After all Disputed Claims have been resolved and all such Claims that become Allowed Claims have been paid in full, any remaining property in the Distribution Reserve Accounts will be distributed Pro Rata to Holders of Allowed General Unsecured Claims in accordance with the other provisions of the Plan.

(e)     **Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of section 502(d) of the Bankruptcy Code, except as provided by a Final Order of the Bankruptcy Court or a settlement among the relevant parties.

**13.10. Distributions Under the Plan**

(a) **Distributions to be Pro Rata Within a Class.** Except as otherwise provided in the Plan, all Distributions constituting a partial payment to Holders of Allowed Claims or Interests within a specific Class shall be made on a Pro Rata basis to the Holders of Allowed Claims or Interests in such Class.

(b) **Means of Cash Payment.** Cash payments made pursuant to the Plan will be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, by a commercially reasonable manner as the payor will determine in its sole discretion.

(c) **Delivery of Distributions.** Subject to Federal Rule of Bankruptcy Procedure 9010, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Proofs of Claim Filed by such Holders (or at the last known address of such a Holder, per the Debtor's Schedules or records, if no Proof of Claim is Filed or if the Creditor Trustee has been notified in writing of a change of address). If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Creditor Trustee, or its designee, is notified in writing of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions made through the Creditor Trustee shall be returned to the Creditor Trustee until such distributions are claimed. All claims for undeliverable distributions shall be made in writing to the Creditor Trustee on or before the first anniversary of the returned distribution. After such date, all unclaimed property shall revert to the Creditor Trust or any successor thereto, and the Claim of any Holder with respect to such property shall be discharged and forever barred. The Creditor Trustee may employ or contract with other entities to assist in or make the distributions required under the Plan. **The Creditor Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim or Interest, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim or Interest.**

(d) **Fractional Dollars; De Minimis Distributions.** Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Creditor Trustee will not make any payment of less than one hundred dollars ($100.00), or twenty-five dollars ($25.00) as to an Allowed Convenience Claim in Class 7, with respect to any Allowed Claim or Allowed Interest, and the Creditor Trust shall retain any such payment.

(e) **Unclaimed Property.** Any Distributions that become Unclaimed Property shall be retained by the Creditor Trust, free and clear of any claims or restrictions thereon, and any entitlement of any Holder of any Claim or Interest to such Distributions shall be extinguished and forever barred. Unclaimed Property shall be deposited into a pool for redistribution to other Holders of Allowed Claims or Interests in the same Class as the intended recipient of the Unclaimed Property.

## ARTICLE XIV
## VOTING AND EFFECT OF REJECTION BY
## ONE OR MORE CLASSES OF CLAIMS

### 14.01.  Impaired Classes to Vote

Each impaired Class will be entitled to vote separately to accept or reject the Plan.  A Holder of an Allowed Claim or Interest in an impaired Class may vote to accept or reject the Plan.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 14.02.  Acceptance by Classes

A Class of Claims or Interests that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Ballot Deadline will not be counted.

### 14.03.  Section 1129(b) Cramdown

If any impaired class of Claims fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Proponents reserve the right to request the Bankruptcy Court to confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.  The Proponents assert that the Plan provides for fair and equitable treatment of all Classes of Claims and Interests.  The Proponents reserve the right to amend the Plan as may be necessary to obtain confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE XV
## RETENTION OF JURISDICTION

### 15.01.  Jurisdiction

The Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under sections 105(a) and 1142 of the Bankruptcy Code, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to enforce all Causes of Action that may exist on behalf of the Debtor, its Estate, or the Creditor Trust, and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor or the Creditor Trust from taking any action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtor, its Estate, or the Creditor Trust and that may not have been enforced or prosecuted by the Debtor, which Cause of Action, or other causes of action shall

survive confirmation of the Plan and shall not be affected thereby except as specifically provided in the Plan.

### 15.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim or Interest and the reexamination of Claims and Interests that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims and Interests.  The failure by the Debtor or the Creditor Trust to object to, or to examine, any Claim or Interest for the purposes of voting will not be deemed a waiver of its right or the Debtor's or the Creditor Trustee's right to object to, or to re-examine, the Claim or Interest in whole or in part.

### 15.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the assets of the Estate or the Creditor Trust, (b) disputes concerning the allowance of Claims and Interests, and (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, for the Debtor and the Creditor Trust to recover assets pursuant to the provisions of the Bankruptcy Code.

### 15.04.  Additional Purposes

The Bankruptcy Court will retain jurisdiction to the extent permitted by applicable law for the following additional purposes after the Effective Date:

(a)  to hear and determine any modification of the Plan or the Plan Documents pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Documents, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)  to issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Documents and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)  to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(d)  to construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(e)      to adjudicate matters arising in this case, including matters relating to the formulation and consummation of the Plan;

(f)      to enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or the Creditor Trust and orders authorizing or directing amendments, extensions or waivers of the terms of the Plan Documents and to impose any limitations, restrictions, terms and conditions on the title, rights, and powers as the Bankruptcy Court may deem necessary;

(g)      to determine all questions and disputes regarding title to the assets of the Debtor, its Estate or the Creditor Trust.

(h)      to hear and determine any dispute involving or affecting the existence, nature, scope, validity or enforceability of the Debtor's discharge referred to in Section 11.05 of the Plan and the Bankruptcy Code;

(i)      to enter a Final Decree closing this case;

(j)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Documents, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Documents, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents, and such other documents may be substantially realized thereby;

(k)      to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(l)      to hear and allow applications for fees and expenses pursuant to sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(m)      to decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(n)      to decide issues concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(o)      to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date and in any way related to the Plan or the transactions contemplated hereby and against the Debtor and/or the Creditors Committee, and their respective officers, directors, shareholders, members, partners, attorneys, financial advisors, representatives, and agents;

(p)      to adjudicate any issues concerning assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(q)    to hear and determine any and all objections to any Claims (including Administrative Claims) or Interests, including the allowance, classification, priority, secured status, compromise, estimation, or payment thereof;

(r)    to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest of any Creditor or Holder and to re-examine Claims that have been allowed for purposes of voting, and to determine objections that may be filed to Claims, including the resolution of any request for any Administrative Claim, and the determination of any M&M Lien Claim;

(s)    to hear and determine any litigation, including but not limited to Causes of Action commenced by or against the Debtor, the Creditor Trust, or the Creditor Trustee, or their property, and any collection matters related thereto, and settlements thereof;

(t)    to hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien or Security Interest and any Claim associated therewith; and

(u)    to hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 15.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in Article XV of this Plan, the provisions of this Article XV shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## <u>ARTICLE XVI</u>
## MISCELLANEOUS PROVISIONS

### 16.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

–to the Debtor:

Mark A. Worthey
1048 Texan Trail
Grapevine, TX 76051

–with a copy to counsel for the Debtor:
Patrick J. Neligan, Jr.
Neligan Foley LLP
1700 Pacific Avenue, Suite 2600
Dallas, TX  75201
Fax:  214-840-5301

–to the Creditor Trustee:

Jason R. Searcy
P.O. Box 3929
Longview, TX  75606-3929

### 16.02.  Plan Supplement

No later than ten (10) days prior to the Confirmation Hearing, the Proponents shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Proponents will serve copies of the Plan Supplement on the Office of the United States Trustee and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Proponents' counsel.  The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 16.03.  Exemption From Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment.  All recording officers and other entities whose duties include recordation of documents lodged for recording shall record, file, and accept such documents delivered under the Plan without the imposition of any charge, fee, governmental assessment, or tax.

### 16.04.  Asserting and Curing Default Under the Plan

If the Debtor or the Creditor Trust defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents may provide independent bases for relief concerning the assertion and cure of defaults), any Creditor or party in interest desiring to assert a default will provide the Debtor or the Creditor Trust, as applicable, with written notice of the alleged default.  The Debtor or the Creditor Trust will have thirty (30) days from receipt of written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy

Court, and serve on counsel for the Debtor or on the Creditor Trustee, as applicable, a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

Notwithstanding the foregoing, a failure by the Debtor or the Creditor Trust to make a payment to Texas Comptroller of Public Accounts (the "Comptroller") pursuant to the terms of the Plan shall be an event of default.  If the Debtor or the Creditor Trust fails to cure an event of default as to the Comptroller within fifteen (15) calendar days after service of a written notice of default from the Comptroller, then the Comptroller may (a) exercise any and all rights and remedies under applicable non-bankruptcy law to enforce the entire amount of its Allowed Claim(s), or (b) seek such relief as may be appropriate from the Bankruptcy Court.  The Debtor or the Creditor Trust will be allowed to cure no more than three events of default with the Comptroller.

Further notwithstanding the foregoing, a failure by the Debtor or the Creditor Trustee to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default.  If there is a default as to the IRS, the IRS must send written demand for payment to the Creditor Trustee and the subject payment in default must be received by the IRS within fifteen (15) days of the date of the demand letter.  The Creditor Trustee can receive up to five (5) notices of default from the IRS; however, on the fifth default notice from the IRS, the foregoing cure period shall not apply and the IRS may accelerate its Allowed Claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire Allowed Claim(s) of the IRS, whether secured, unsecured priority or unsecured general.  The IRS is bound by the provisions of the Plan, if confirmed by a Final Order, and is barred under 11 U.S.C. §§ 524(a)(2) & 1141 from taking any collection action against the Debtor or the Creditor Trust for pre-petition claims during the existence of the Creditor Trust, except as provided in the foregoing subparagraph (b).  The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the Plan and such suspension shall terminate on the earlier of (1) all required payments to the IRS under the Plan have been made; or (2) 30 days after the date of the demand letter (described in subparagraph (b) above) for which the Debtor or the Creditor Trustee failed to cure the default.

### 16.05.  Compliance with Tax Requirements`

In connection with the Plan, the Debtor and the Creditor Trustee will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to the withholding and reporting requirements.

### 16.06.  Revocation or Withdrawal of the Plan

The Proponents reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Proponents revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Proponents or any other Person or to prejudice in any manner the rights of the

Proponents, the Debtor, or any other Person in any further proceedings involving the Proponents, the Debtor, or any other Person.

### 16.07.   Modification of the Plan

The Proponents reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Proponents further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Proponents shall have complied with section 1125 of the Bankruptcy Code, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code.  A Holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 16.08.   Due Authorization

Each and every Holder of an Allowed Claim who elects to participate in the Distributions provided for in the Plan warrants that it is authorized to accept, in consideration of such Claim or Interest, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 16.09.   Implementation

The Proponents, the Creditor Trustee, and the Plan Committee will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

### 16.10.   Execution of Documents

Upon application by Creditor Trust or either of the Proponents, the Bankruptcy Court may issue an order directing any necessary party to execute, deliver, or to join in the execution or delivery of an instrument or document, and to perform any act necessary for the consummation of the Plan.

### 16.11.   Bankruptcy Restrictions

From and after the Effective Date, the Debtor and the Creditor Trust shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise following the Confirmation Date (e.g., 11 U.S.C. § 1127(b)).  No monthly operating reports will be filed after the Effective Date; however, the Debtor or the Creditor Trustee shall provide the U.S. Trustee such financial reports as may be required by law.

### 16.12.  Other Documents and Actions

Except as expressly provided for herein or in the Confirmation Order, the Debtor, the Creditors Committee, and/or the Creditor Trustee may execute such documents and take such other action as is necessary to effectuate the transactions provided for in this Plan without the need for further Bankruptcy Court approval.

### 16.13.  Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in this case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays continued in the Plan or the Confirmation Order), will remain in full force and effect until the Effective Date.

### 16.14.  Integration Clause

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, its Creditors, and other parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or any of its provisions.

### 16.15.  Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 16.16.  Severability of Plan Provisions

Unless otherwise ordered by the Bankruptcy Court, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, the Proponents will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provisions held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 16.17.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed or amended in connection with the Plan (including, without limitation, the Plan Supplement) and (b) the state of incorporation of the Debtor (Texas) shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereto.

### 16.18.  Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006 shall apply.


REICHMANN PETROLEUM CORP.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF REICHMANN PETROLEUM CORP.


By:  _/s/ Mark A. Worthey_____
      Mark A. Worthey
      Its Chief Executive Officer

By:  _/s/ Randy W. Williams_____
      Randy W. Williams
      Its Attorney-in-Fact

THOMPSON & KNIGHT LLP
333 Clay St., Suite 3300
Houston, TX  77002
Phone:  (713) 654-8111
Fax:  (713) 654-1871

REMAINDER OF THIS PAGE INTENTIONALLY BLANK

40695v.1